ISAAC B. POTTER, appellant, *v.* LEONARD DENNISON, appellee.

## *Appeal from Lake.*

Whenever a factor barters or otherwise disposes of the goods of his principal, in a manner not authorized by his principal, and not within the ordinary and accustomed modes of transacting the like business, the principal may follow and reclaim the property, whether the person dealing with the factor knew him to be such or not, and although the factor was in possession of the goods, and sold them in his own name.

If, however, the principal, by any act of his own, has induced such third person to believe he has given the factor authority so to dispose of the goods, the principal can not reclaim the goods.

Although the owner of goods permit his agent to transact the ordinary business of a merchant, with such goods, in his own name, yet the owner is bound by the acts of his agent only so far as they are within the ordinary mode of transacting that particular branch of business; provided there are no circumstances tending to show that he permitted the agent to use his own name with a view of imposing upon others.

When it is necessary for the plaintiff to execute a deed to the defendant before he brings his suit, and he does all in his power towards such execution, but is prevented by the defendant from completing it, his rights in the suit will be the same as if the deed had been executed.

An objection, whether well or ill taken, that the appellee, being plaintiff below, split his cause of action into two suits, cannot be assigned for error in the Supreme Court when no such objection was taken in the Circuit Court.

REPLEVIN AND TROVER, brought by the defendant in error against the plaintiff in error, and tried at the March term, 1848, of the Lake Circuit Court, by the Hon. Jesse B. Thomas, the parties dispensing with a jury. Both suits were between the same parties, depending on the same facts, and tried together on the same evidence. The defendant pleaded the general issue, and property in himself, to the declaration in replevin, and the general issue alone in the action of trover.

The plaintiff below read in evidence at the trial the depositions of Elisha E. Dennison and E. W. Hoyt, and on their testimony submitted his case.

Said Dennison testified substantially as follows: that he is the son of the plaintiff below, who is a farmer residing

in Sackett's Harbor, Jefferson county, State of New York; that the said plaintiff, Leonard Dennison, bought part of the goods in question in his own name at Albany, Buffalo, and Oswego, in the State of New York, and a part of them at Chicago, Illinois, and that another part of them was bought by the said witness, in his own name, at Little Fort, Lake county, Illinois; that the goods bought by Leonard Dennison, were bought at witness' request, and for him to sell, and that his (witness') interest in the trade was common with that of Leonard Dennison; that there was no agreement between Leonard Dennison, plaintiff, and the witness, upon what terms witness was to sell the goods, or what was to be his compensation; that the plaintiff accompanied a part of the goods to Little Fort; that there witness opened a store with the goods in question, advertising and selling them in his own name; that he continued to do business thus for the term of ten months in the years 1846 and 1847; that he never did become the purchaser of said goods or any part or portion of them from the plaintiff, or any other person, or any interest therein; that on the 4th of June, A. D. 1847, he sold the residue of the goods then on hand to the defendant below; that the consideration received from the said defendant was the conveyance of 240 acres of land in Lapeer county, Michigan, to Leonard Dennison; that he (witness) received the deed as the agent of Leonard Dennison; that the deed was by the witness given up to the grantor to be destroyed on the 19th June, 1847, (which was three days after the execution thereof) and that he (said Potter) acknowledged that he had destroyed it; that the reason why the deed was given up was because witness exchanged said land with Potter for twelve shares of copper stock in the Mineral Creek Mining Company; that the said Potter represented that the company was doing a good business, and had, the year before, made a dividend of thirty three per cent. and that such representations induced him to exchange the land for copper stock. The witness then narrates the *ex parte* statements of Isaac E. Berry and George Gibbs, that the certificates of stock were worthless, and

says that Potter admitted he knew they were so; that witness was informed that the stock was forfeited to the company for a failure to pay up the assessment; that the land was exchanged for copper stock on the 19th June, 1847; that six hundred and twenty seven dollars and seventeen cents of the property, (a schedule of which is given in the deposition,) was replevied from and delivered over to Leonard Dennison, and that property of the value of two hundred and forty eight dollars and eighty three cents ( a schedule of which is also given) was not replevied because the same could not be found; and that Potter admitted the sale of certain articles (specified by witness) contained in that schedule.

To all the testimony relating to the exchange of land for copper stock, the defendant below objected, because the testimony given showed that the goods in question had been conveyed to the defendant for the Lapeer land, and that any other trade had no relation to the issue.

E. W. Hoyt, for the plaintiff below, testified, that on Saturday before the commencement of the suit, Potter, the defendant below, admitted in his presence to Leonard Dennison, the purchase of the goods from E. E. Dennison for the Lapeer land; the subsequent exchange of the land for copper stock; that Potter declined the delivery of the property purchased to Leonard Dennison, and said he could not find his deed for the Lapeer land, &c.; that he marked out on the ground where he thought it was situated, and said he had never heard the name of Leonard Dennison mentioned until he was requested to make the deed to him.

The testimony of the defendant was in substance as follows: N. P. Davost testified that he published a newspaper at Little Fort, called the Lake County Herald, from the 28th of August to the 9th of September, 1846, in which E. E. Dennison advertised himself as a dealer in stoves, iron, nails, grind stones, stone and hard ware, and gave a copy of such advertisement.

Henry W. Blodgett swears, that from the 2d day of April

and for three months thereafter he was the publisher of a weekly newspaper at Little Fort, called the Lake County Visitor, and that during that time he published for E. E. Dennison a Card, (a copy of which he recites,) and that he mailed in each week of that time a copy of said paper, directed to Leonard Dennison, at Sackett's Harbor, in the State of New York. ·

Upon the foregoing testimony the Court found the issues in both cases for the plaintiff, and assessed his damages, in the action of trover, at two hundred and seven dollars and thirty nine cents.

The defendant moved for a new trial, on the ground that the verdicts were against the evidence, against the law and the evidence, and because of newly discovered evidence, which last ground was supported by affidavits. The motion was overruled and judgment entered on the verdicts. The defendant excepted and brought the cases here by appeal.

*J. H. Collins,* for the appellant.

I. The defendant in error, having allowed Elisha E. Dennison to hold himself out as the owner of the goods, cannot now deny that he was the owner, and is bound by his acts.

It was an admission, which, having been acted upon, is conclusive against defendant. 1 Greenl. Ev. § 207.

"Admissions which have been acted upon by others are conclusive against the party making them, in all cases between him and the person whose conduct he has thus influenced. 2 Kent's Com. 614.

"It is of no importance whether they were made in express language to the person himself, or implied from the open and general conduct of the party." *Vide* 1 Maul. & Sel. marginal page, 147.

II. At least the defendant in error cannot deny that Elisha E. Dennison, if an agent at all, had full discretionary power to dispose of the goods in any way he pleased.

The defendant has "clothed the agent with all the apparent

muniments of an absolute title, and authorized him to dispose of the property as sole owner," by giving him the possession, and permitting him to hold himself out to the world as sole owner, and to buy, sell, and exchange at pleasure. Story's Agency, § 227 ; Paley's Agency, 325.

It is not shown what the nature and extent of the agency were, except by the acts and admissions of the principal and agent. E. E. Dennison, by whom, as is apparent from his manner of testifying, any necessary fact could have been proved, does not pretend that his agency had any limitation. By his acts, done with the knowledge of his principal, he appears to have been clothed with unlimited powers. He sold, purchased and bartered in his own name. The oats, lime, notes for lime, and other articles sued for, show that he did not transact an ordinary factorage or commission business.

Why did not Elisha E. Dennison swear as to the limitation of his powers, if they had any limit ? The question whether the sale of the goods for the land was out of the usual course of trade, is one of fact and not of law, and the *onus probandi* is with the defendant in error.

III. The deed from the plaintiff in error to the defendant in error vested the legal title to the lands given for the goods ; and the title was not divested by a surrender of the deed, or its cancellation. And before Dennison could recover for the goods he should have made out and tendered a deed to Potter for the land.

"When a deed has been duly executed and delivered, a subsequent surrender or destruction will not divest the estate conveyed by it." 1 Johns. Ch. R. 344.

IV. The defendant in error cannot maintain both actions. He cannot split or divide his claim, and bring replevin for part of the goods and trover for the residue. *Fanington & Smith* v. *Payne,* 15 Johns. 431; *Smith* v. *John,* ib. 227 ; *Philips* v. *Berick,* 16 do. 136 ; 1 U. S. Dig. 65, §§ 190,191.

The evidence is the same in all respects in both cases ; and the deposition of E. E. Dennison shows that the goods replevied were all that could be found, and that for the remainder of the goods the trover suit was brought.

It is proved then in both cases, by the defendant in error, that he has brought two actions for the same identical injury.

In the trover suit the evidence that the defendant in error has brought two actions for the same cause was admissible under the general issue. But as the defendant in error has introduced the proof, he cannot object to it in either action on the ground that the plaintiff in error did not plead it, either in abatement or bar. If he will make the proof, the plaintiff in error may raise any question upon it which he might, if the facts so proved were properly pleaded.

*E. W. Hoyt* and *I. N. Arnold* for the appellee.

I. The sale not being in any of the modes recognized by law as within the scope of a factor's power, and not being shown to have been sanctioned or authorized by the custom and usage of trade at the place, and no special authority which would sanction and support the sale in this extraordinary and unusual manner having been shown, it was void, and no title passed thereby to the purchaser. Story's Agency, § § 126, 225–6; Dunlap's Paley's Agency, 212, 213, 218; 2 Kent's Com. 621, 623.

"A factor is a *bailee* of goods or money to merchandize, (or buy and sell,) for the profit of his principal, and render him an account thereof." 1 American Leading Cases, 478; 2 Kent's Com. 622, b; Story's Agency, § 33 and note 3.

Ignorance of the fact that the vendor is an agent, will not take the case out of the rule, that such unauthorized sales are void. Story's Agency, §§ 225, 227; 2 Kent's Com. 625; Dunlap's Paley's Agency, 219; and see 218 to 220.

There is only one exception to this principle, and that is where the purchaser has a set-off, and deals with the agent as principal in ignorance of his true character. This is manifestly an exception. 2 Kent's Com. 632. Nor will the fact of the agent's conducting the business in his own name take the case out of the general rule which makes the unauthorized sale void. This is a power or right incident to the relation, sanctioned and recognized by law, and not depend-

ent upon the express authority or sanction of the principal. Story's Agency, § § 34, 110, 112, 401, a.

There are only two exceptions to the general rule first stated. 1st. Sales in *market overt*. 2nd. Where the agent is clothed by his principal with all the apparent "muniments of an absolute title." Dunlap's Paley's Agency, 212; Story's Agency, § 227.

It is said that "in no other way than by clothing the agent with these muniments of title, can the principal bring himself into wrong." Dunlap's Paley's Agency, 219.

By muniments of title is meant "title deeds," "invoices," "bills of purchase." See Dunlap's Paley's Agency, 215, note (g,) and 219. Or, possession of negotiable instruments, which is evidence of ownership. But even here there must be a *bona fide* consideration paid. Paley's Agency, 233, and note *a;* Story's do. §228; also see 227; 2 Kent's Com. 626, (marginal.)

II. The sale was void on the ground of want of authority, coupled with notice that plaintiff was in some way interested in the property, prior to completion of the purchase. The request to make the deed to plaintiff was sufficient to put the defendant on inquiry as to whether E. E. Dennison was the true owner.

III. It was void on the ground of fraud. 1. There were fraudulent representations as to value of the copper stock. 2. The evidence tends to show that defendant had no title to the land. 3. It was one entire transaction, connected by the evidence of intention from the beginning, to get the property without payment of value therefor and by fraud.

The deed was never delivered to plaintiff. It was delivered to his general agent in the particular business, re-delivered to defendant, and by him destroyed, showing that the parties did not regard it as having been delivered so as to make it operative to vest title in plaintiff. As to when assent will be presumed, in case of delivery to a stranger or third person, see 15 Wend. 659; 12 do. 1056; *Hulick* v. *Scovil*, 4 Gilm, 159; and U. S. D. Supplement, vol. 1, 550, § 664.

IV.   The motion for a new trial was properly denied.  If the above positions are correct, the finding on the issues was authorized by the evidence.   As to newly discovered evidence, it must be material.  2 Tidd's Pr. 906.   It must not be merely cummulative.   1 Scam. 491.

Courts will not grant a new trial unless the rules of law and purposes of justice require it.  Gilm. Dig. 538–9 ;  Tidd's Pr. 906

The Opinion of the Court was delivered by

TRUMBULL, J.   The records in these cases show, that Leonard Dennison, the plaintiff in the Court below, resided in the State of New York;  that he furnished a quantity of goods, chiefly hardware, to be sold by his son, Elisha E. Dennison, at Little Fort, Lake county, Illinois;  that Elisha carried on the business in his own name, but in fact had no interest in the goods;  that after having been engaged in the business some ten months, he exchanged the entire stock of goods with the appellant for lands in Michigan ; that the deed for the lands was made to Leonard Dennison, the father, and delivered to Elisha;  that a few days after this arrangement Elisha made another trade, by which he agreed to surrender up to appellant the lands in Michigan for twelve shares of copper stock in the Mineral Creek Copper Mining Company, which turned out to be worthless, and in pursuance of this last arrangement he delivered up to appellant the deed to his father, which was destroyed.

Not long after the above transactions took place, the appellee came to Little Fort, claimed the goods as his, and that Elisha had no authority to dispose of the same in the manner it had been done.

H called upon the appellant in company with his son, offered to re-convey the Michigan lands to appellant and to return to him the copper stock, and demanded the goods. Potter refused to give. up the goods, and appellee brought an action of replevin for such portions of them as he could find, and sued in trover for the balance.

The two cases were tried together, by consent of parties, and upon the same evidence.

The Court found the issues for the appellee, and gave judgment that he recover the goods replevied, and damages to the amount of $207·39 in the action of trover.

The appellant moved for new trials, which were denied, and now assigns for error the findings of the Court, and the refusal to grant new trials.

The first point made by appellant is, that the appellee, by suffering his son to hold himself out as the owner of the goods, cannot now deny that he was such owner, and is bound by his acts.

There is evidence in the record tending to show that the appellee must have known that his son was carrying on the business in his own name, though there is no positive proof of the fact; but admitting that there was such proof, is he thereby precluded from showing the facts in the case? We think not. Factors may and often do sell goods in their own names. Story's Agency, §§ 110 and 134. And yet the principal, whenever his factor has bartered or otherwise disposed of the goods in a manner not within the ordinary and accustomed modes of transacting the like business, may follow and reclaim the property; and in such a case, it is wholly immaterial whether the person dealing with the factor knew him to be such or not. Ib. §§ 224 and 225; Dunlap's Paley's Agency, 219.

If the appellee had, by any act of his, been the means of imposing upon the appellant, and inducing him to believe that his son was clothed with authority to barter off the store of goods for Michigan lands, the case would be different; but there is no such evidence in the record, nor is it even shown, with certainty, that he knew in whose name his son was carrying on the business.

But suppose he did know and permit his son to transact the ordinary business of a merchant in his own name, he would even then be bound by his acts only so far as they were within the ordinary mode of transacting that partic-

ular branch of business, provided there were no circumstances tending to show that he permitted him to use his own name with a view of imposing upon others. A sale of goods by the son under such circumstances for cash, or any other disposition of them in accordance with commercial transactions, would have bound the appellee, but when one deals with a merchant in so extraordinary a manner as to purchase his entire stock of goods for wild lands, he is bound to inquire strictly whether the person with whom he is dealing has authority to make an agreement so unusual, and if he will not do so, he runs the risk of having the goods taken from him by the real owner in case it should afterwards turn out that they did not belong to the person with whom he dealt.

"A factor cannot dispose of goods in the way of barter." Dunlap's Paley's Agency, 213. If he do, the owner may sue the innocent purchaser in trover. 2 Kent's Com. 625. In the case of *Guerreire* v. *Peile,* 3 Barn. & Ald. 616, the plaintiffs, who were merchants resident at Oporto, consigned the wines in question for sale to Bannester & Vidal, merchants in London. Bannester & Vidal employed one White, a broker, to sell the same, and he by their orders exchanged the wines with the defendants for a quantity of rum. White did not know that Bannester & Vidal were only factors in the transaction and there was no evidence that the defendants knew the fact. Bannester & Vidal having subsequently become bankrupts without having accounted to the plaintiffs for the proceeds of the wine, they brought an action of trover against the defendants. At the trial the jury were instructed, "that if they were of opinion that Peile & Co. knew Bannester & Vidal to be factors they should find for the plaintiffs; and supposing they did not know that fact, if the jury thought that this was a transaction in the ordinary course of trade where parties are dealing with their own commodities they would find for the defendant." The jury found a verdict for the defendant. Subsequently a rule *nisi* for a new trial was obtained, and Abbot, C. J. in making the rule absolute said: "my learned broth-

ers think I ought to have told the jury upon these facts, that this was a transaction of barter, and that the plaintiff's property was not divested, because a factor has no authority to barter; and I am also of that opinion."

The cases before us are much stronger than that of *Guerreire* v. *Peile*. That was a small transaction, the exchange of merchandise for merchandise. This is an exchange of an entire stock of goods, all the man had, and not for goods, but for lands.

There is moreover some evidence in the record to show that Potter had notice before the exchange was consummated, that Elisha E. Dennison was not the owner of the goods. The deed to the Michigan lands was not made to him, but to his father, a circumstance sufficient to have put him upon inquiry when making so extraordinary a trade, and from this circumstance the Circuit Court may have been justified in coming to the conclusion that he knew, or might by the use of ordinary diligence have ascertained, that the goods did not belong to the person with whom he was dealing. *Rodriguez* v. *Heffernan* 5 Johns. Ch. R. 417. Notice at any time before the exchange was consummated by the delivery of the deed would have been in time.

Another objection made to the recovery in these cases is, that the appellee, by the delivery of the deed from Potter became seized of the Michigan lands; that his title was not divested by the surrender up of the deed, and that it was necessary for appellee to re-convey before he could maintain these suits. If such was the law the appllee did all he could to comply with it before bringing suits. He had no means of ascertaining the description of the lands. He applied to the appellant for a description and proffered to re-deed the lands, but the appellant either could not or would not furnish such description, and having by his own default put it out of the power of the appellee to make a deed, such act is equal to performance. *Hastram* v. *East India Co.* 1 T. R. 639.

It is also objected that the appellee had no right to split the cause of action and bring two suits for the same lot

of goods. No objection of the kind was taken in the Court below, and without determining whether the objection would have been tenable even there, as it was impossible to replevy the whole stock of goods, some of them having been disposed of, we are clearly of opinion that it is no ground of error.

Upon the question of the refusal to grant new trials, without attempting to review the evidence in detail, it will be sufficient to remark that we have examined it, and think it justified the findings of the Court.

The motions for new trials were therefore properly over-ruled and there being no error in the records the judgments by the Circuit Court are affirmed with costs.

*Judgments affirmed.*