## FRANCESCO ROMEO vs. GUISEPPE MARTUCCI.

Third Judicial District, Bridgeport, Oct. Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The possession of goods consigned and the right to sell them are the distinctive characteristics of an ordinary contract of consignment. The title to the goods, however, remains in the consignor, and is not defeated by any disposition of them by the consignee which is not within the agency established by the contract.

A wholesale grocer in New York consigned a lot of groceries to a New Haven retailer for him to sell in his store at New Haven and account therefor to the consignor. Upon receipt of the New York goods the consignee sold out his entire stock, including the groceries so consigned to him, and the good-will of his business, and immediately left town without accounting to the consignor. *Held* that there was nothing in the conduct of the consignor which was inconsistent with the real nature of the transaction, or which would estop him from asserting his title to the goods in an action of replevin against the purchaser, even though the latter bought in good faith and for value. (*Two judges dissenting.*)

Argued Oct. 26th, 1899 — decided Jan. 4th, 1900.

ACTION of replevin to recover a quantity of groceries, brought to the Court of Common Pleas in New Haven County and tried to the court, *Bishop, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings of the court. *Error, judgment reversed and cause remanded.*

The finding states the facts on which the judgment is founded, as follows : —

" 1. The plaintiff is in business in the city of New York, engaged in the wholesale grocery, provision and wine business, under the name of F. Romeo & Co. 2. On January 3d, 1899, through F. S. Saverese, his agent at New Haven, the plaintiff agreed to ship to Orlando Ricciardelli & Bro., then engaged in the retail grocery business at 169 Wallace street in said New Haven, a lot of groceries, being the goods more specifically described in the complaint in this action, of the value of $559.57, which goods were shipped to said Ricciardelli & Bro. upon consignment to be sold by them at retail in their business as retail grocers in their store at New Haven, the title to said goods to remain in the plaintiff until the same were sold at retail, the said Ricciardelli & Bro. acting as agents for the plaintiff, and to account to the plaintiff from time to time for the proceeds of such sales, said goods to be returned if not sold by the said Ricciardelli & Bro. ; said goods were shipped January 11th, 1899, and received by said Ricciardelli & Bro. at New Haven, January 20th, 1899. 3. The defendant resides in New York, and is in the business of supplying laborers to contractors, and heard through a barber, whose name was unknown to him, that the store and business of Ricciardelli was for sale; this was prior to January 20th, 1899. He came to New Haven on said January 20th, 1899, went to the store, examined it, made inquiries in regard to the character of the Ricciardelli Brothers and about the store, and thereupon returning agreed with said Ricciardelli & Brother to buy the business and stock at said store for $965. 4. The defendant and Ricciardelli & Brother went to the office of one Joseph R. Manning, who is engaged in the real estate and insurance business in New

Romeo v. Martucci.

Haven, and had him draw up a bill of sale of the goods in said store and the good will of said business, which said bill of sale was executed in the presence of said Manning, a copy of which bill of sale is hereto annexed, and marked Exhibit A. *
5. Said Manning saw no money passed, and had no part either in payment of any money or in the transfer of the possession of said goods. 6. The defendant testified that he had paid said sum of $965 to said Ricciardelli for said goods, and there being no evidence to contradict him, the court finds that he did pay said sum for said goods. 7. The goods consigned by the plaintiff to Ricciardelli & Bro. were in said store, and at

*EXHIBIT A. "Know all men by these presents that I, Orlando and Fioravanta Ricciardelli, of the city and County of New Haven, State of Connecticut, for and in consideration of $965, receipt of which is hereby acknowledged, do grant, bargain, and sell unto Guiseppe Martucci, formerly of the city and State of New York, now of the city and County of New Haven, State of Connecticut, all of the stock, fixtures, implements, tools, household furniture, and good will of the business located at 169 Wallace street, in said New Haven, consisting of stock of groceries, provisions, meats, candies, cigars, and tobacco boxes, cases, bottles, jars, and all other apparatus for holding the same that is now contained in the said store, 169 Wallace street, fixtures, seals, furniture, implements of business, and all other tools now contained in the store No. 169 Wallace street, including bed, stove, two tables, household dishes, while contained in the rear of store No. 169 Wallace street, the good will, stock, fixtures, furniture, and tools used in his business as a grocer.

"To have and to hold the said granted and bargained property as described above unto the said Guiseppe Martucci, his heirs and assigns forever, to his proper use and behoof forever; and the said Orlando and Fioravanta Ricciardelli does vouch himself to be the true and lawful owner of the property herein referred to, and has a good and lawful right and authority to sell the same in the manner as aforesaid.

"And he does for himself, his heirs, assigns, and administrators, forever warrant and defend the said Guiseppe Martucci from whatsoever demand they or all others may make.

"In witness whereof the said Orlando and Fioravanta Ricciardelli have hereunto set their hand and seals, this 20th day of January, 1899.

"ORLANDO RICCIARDELLI [L. S.]

"FIORAVANTA RICCIARDELLI [L. S.]

"The said Orlando and Fioravanta Ricciardelli acknowledge the same to be their free act and deed before me, this 20th day of January, 1899.

"JOSEPH R. MANNING,

"Notary Public."

the time of the sale were a part of the stock transferred in the sale, and there was nothing to indicate that they were held by said seller on any different terms than was the remainder of the stock, neither was any notice given to the defendant that any one had a claim on said goods. 8. The price paid for said stock and good will was not less than a reasonable price for the same. 9. The said Ricciardelli & Brother put the defendant into possession of said store, and immediately left town and have never returned, and have never accounted to the plaintiff for said goods, or any part thereof. 10. The plaintiff through his agent, F. S. Saverese, upon the following day learned of the transfer, and immediately made demand upon the defendant for said goods; the defendant refused to give up and deliver the same to the plaintiff. 11. The plaintiff thereupon brought this action of replevin.

" Upon these facts the plaintiff claimed (1) that the alleged sale from Ricciardelli & Bro. to Martucci was not *bona fide* but fraudulent; (2) that the defendant was not in the lawful possession of said goods, as said alleged sale was fraudulent; (3) that the said Ricciardelli & Bro. had no title to said goods, and had no right or authority to sell the same as a whole to the defendant or any other person whatsoever; (4) that no title to said goods passed to the defendant, because said Ricciardelli & Bro. had no title or authority to sell said goods in any manner or form, except at retail in their business as retail grocers; (5) that said goods were the lawful property of the plaintiff and he was entitled to the immediate possession thereof, the said Ricciardelli & Bro. having abandoned the same; (6) that the defendant had no title in said goods, and the said Ricciardelli & Bro. had no title in said goods; that the title was and remained in the plaintiff; (7) that the said Ricciardelli & Bro. never sold said goods to the defendant, having sold him only what they had title to, as appeared by the covenant of warranty in said bill of sale.

" The court overruled said claims of the plaintiff, and rendered judgment for the return of the goods replevied in said action, and for the defendant to recover his costs."

*Richard H. Tyner*, for the appellant (plaintiff).

*James E. O'Connor*, for the appellee (defendant).

HAMERSLEY, J.   The finding is in some respects strongly suggestive of bad faith on the part of the defendant; but as the court, notwithstanding the suggestive appearances, finds that the defendant paid a reasonable price after inquiry and without notice of defect in title, he must be treated as an innocent purchaser for value.

We have, then, these facts.   Ricciardelli & Bro., retail grocers in New Haven, agreed to sell on commission for the plaintiff, a wholesale grocer in New York, a quantity of groceries valued at $559.   The goods were received on consignment at New Haven on January 20th, and the same day the Ricciardellis, for the lump price of $965, sold their grocery store, stock (including the plaintiff's property), fixtures, household furniture and good-will of business, to the defendant, a purveyor of contract laborers in New York, and then disappeared without accounting to the plaintiff.   This action was brought the next day.

There is no doubt as to the relation between the plaintiff and the Ricciardellis : it is that of principal and factor, a relation long regarded as beneficial in the transaction of business, and one whose legal effect has been defined by numerous decisions.   *Lawrence* v. *Stonington Bank*, 6 Conn. 521, 527. The property consigned is bailed, and remains in the ownership of the consignor until disposed of by the consignee in pursuance of the agency established by the fact of the consignment.   If the consignee, in violation of the consignment and out of the usual course of business, transfer to another, the consignor is entitled to retake his property notwithstanding it may have been so transferred to an innocent purchaser for value.   This principle is too thoroughly established to permit of argument.   The transfer by the Ricciardellis was in plain violation of the consignment; no serious claim to the contrary is made or can be maintained.

The only real question is whether the plaintiff has done

Romeo *v.* Martucci.

anything which estops him from setting up his right as consignor. If by his voluntary action he clothed the Ricciardellis with an appearance of ownership beyond that involved in the ordinary contract of consignment, and the defendant was thereby deceived to his damage, he is estopped from denying the authority thus evidenced by his acts. This principle is rooted in justice and has been applied to a great variety of conditions. Such action by the owner of property may furnish evidence of fraud, and the question of estoppel is sometimes confused with that of fraudulent transfer. Possession may be evidence of fraud when it conceals the usual evidence of a change of title. This applies especially to the mortgage or pledge of personal property where the mortgagor is presumed to remain owner of the property unless there is a change of possession. But it is different where property known to belong to one man comes into the possession of another; in such case it becomes a matter of inquiry whether he has borrowed it, or hired it, or purchased it; and this ought to be ascertained by him who proposes to trust his property upon the faith of this appearance. *Forbes* v. *Marsh*, 15 Conn. 384, 397. Accordingly, cases of conditional sale made *bona fide* have been held good; and in the modern and somewhat perilous enlargement of such sales, the fact of actual intent and good faith is made the test of the transaction. *Lewis* v. *McCabe*, 49 Conn. 141, 155; *Mack* v. *Story*, 57 id. 407, 413.

But here there is no question as to the nature of the transaction; it is the ordinary contract of consignment. There is no question of fraud on the part of the owner; the good faith of his conduct is neither directly nor indirectly impugned. The sole claim is that he has " voluntarily permitted another to hold himself out to the world as being the true owner, and for this purpose entrusted him with the exclusive possession or other *indicia* of title, under circumstances which would naturally tend to mislead." The cases where the real owner has been estopped by having clothed the possessor with *indicia* of title for such purposes and under such circumstances, are many; but " all these cases proceed upon the ground that the owner has deliberately assumed a false position, and a

character inconsistent with that of owner, which, if changed, would result in fraud and damage." They have no application to a case where the acts of the owner are confined to those incident to a legitimate bailment or consignment. " Every borrower or bailee for hire uses the thing bailed, in many respects, as his own; and his conduct, to some extent, furnishes a false index of property; but yet, the legal powers and duties of bailee being entirely consistent with the·true position and character of the owner, the rights of the bailor will be protected against the abuse of the bailee's powers, though he were to sell the property bailed to a *bona fide* purchaser." *Baldwin* v. *Porter*, 12 Conn. 473, 482, 483. A consignee differs from an ordinary bailee, mainly in that he is authorized to sell in the ordinary course of business; but if he sell out of the ordinary course of business he abuses his powers, and against this abuse the consignor is protected like any. other bailor.

When a mortgagee leaves the property mortgaged in the possession of the mortgagor, possession under such circumstances may be treated as an index of title; it is inconsistent with the real transaction which demands a change of possession, and the mortgagee deliberately puts himself in a false position. But in the case of a consignment, the reverse is true. Possession by the consignee is consistent with the transaction, and is evidence of the authority pertaining to that transaction, but furnishes no other index of title as against the consignor. Some act of the consignor inconsistent with the true relation is necessary for that purpose; as if the bill for goods consigned were made out as one for goods sold, or a bill of lading were given which treats the consignee as owner or purchaser. In such way the consignor may put himself in a false position, so that, if the rights of an innocent purchaser intervene, he cannot change that position without fraud and damage. There may be other acts by which a consignor may be estopped from asserting his title, but they must be equivalent in force to the ones indicated.

In the present case it does not appear whether the goods consigned and received on the day of the sale had been un-

packed when the defendant first examined the stock; it is immaterial, except as bearing on the good faith of the defendant; but if he had then asked for some evidence of ownership, he could only have been shown a bill for goods consigned, and the real character of the Ricciardellis' possession would have been apparent. The defendant chose to rely on the authority of the possessors to sell in their retail business indicated only by the possession described. He would have been protected in a purchase within the scope of such authority, which was real as well as apparent. But the selling out of the whole business was not within the scope of that authority. It does not necessarily follow that a retail dealer authorized in the ordinary course of business to sell the articles on his shelves, is therefore the owner of the whole business and every article in his possession. If he attempts to sell his business and stock as a single chattel, he enters upon an outside and independent transaction; the purchaser cannot retain, as against the real owner, portions of that stock held under consignment, unless the owner has clothed the consignee with some index of ownership beyond that incident to the fact of a consignment. Where a principal with full knowledge permits his factor " to transact the ordinary business of a merchant in his own name, he would even then be bound by his acts only so far as they were within the ordinary mode of transacting that particular branch of business, provided there were no circumstances tending to show that he permitted him to use his own name with a view of imposing upon others." *Potter* v. *Dennison*, 10 Ill. 590, 598.

The plaintiff has done nothing to mislead, unless every consignment is misleading. He gave the Ricciardellis possession, but it was the possession of consignees only. He knew that the goods were to be sold by the consignees in their retail store in connection with their other stock, and that the goods were to be sold at retail in the name of the consignees; but these are the ordinary incidents of a consignment to a retail merchant. *Ex parte Dixon*, L. R. 4 Ch. Div. 133, 136, 137; *Slack* v. *Tucker & Co.*, 23 Wall. 321, 330; *Potter* v. *Dennison, supra,* p. 598.

Romeo v. Martucci.

The conduct of the plaintiff amounts to a consignment of his goods for sale in the ordinary course of business, and nothing more. His title cannot be defeated by any disposition of his property not within the agency established by such consignment. A consignee cannot transfer the property in payment of his own debt. *Benny* v. *Pegram*, 18 Mo. 191. He must sell in the market where he transacts business. *Wootters* v. *Kaufman*, 73 Texas, 395, 399; *Catlin* v. *Bell*, 4 Campb. 183; *Marr* v. *Barrett*, 41 Me. 403. He cannot sell by way of barter. *Guerreiro* v. *Peile*, 3 B. & Ald. 616, 618. He cannot pledge the goods consigned. *Paterson* v. *Tash*, Str. 1178; *Kuckein* v. *Wilson*, 4 B. & Ald. 443, 447; *Kelly* v. *Smith*, 1 Blatchf. 290, 293; *Gray* v. *Agnew*, 95 Ill. 315. To turn over the goods consigned to another by a sale of his business and stock in trade is as distinctly a disposition foreign to the consignment and for the benefit of the consignee, as a pledge, or sale in payment of consignee's debt, or a barter. "By the general rule a factor cannot bind the principal by a disposition of his property out of the ordinary course of business." *Commercial Nat. Bank* v. *Heilbronner*, 108 N. Y. 439, 444; *Warner* v. *Martin*, 11 How. 209, 224.

We are asked to treat the ordinary incidents of a *bona fide* consignment as sufficient *indicia* of title to enable the consignee to bind his principal by every act of ownership, as against an innocent third party. This would involve the reversal of the whole line of cases by which the contract of consignment has been recognized and defined.

The court erred in overruling the claim of the plaintiff that upon the special facts found the goods in question were still the property of the plaintiff, and that he is entitled to the immediate possession thereof.

There is error, the judgment of the Court of Common Pleas is reversed and the cause remanded for further proceedings, according to law.

In this opinion the other judges concurred, except AN-DREWS, C. J., and HALL, J., who dissented.

Romeo v. Martucci.

HALL, J. (dissenting). Some features of the parol agreement made by the plaintiff's agent with Ricciardelli & Bro., at New Haven, suggest that a conditional sale rather than a consignment was really intended by the parties. We are required, however, by the finding of facts, to treat the contract as a consignment and not as a sale.

The cases cited by counsel upon the law of conditional sales, are applicable only so far as they determine the respective rights of the owner of the goods and a *bona fide* purchaser from a conditional vendee who was either the apparent owner or had an apparent right to sell as owner.

The cases in this State which most strongly favor the claims of the vendors in contracts of conditional sale, are *Lewis* v. *McCabe*, 49 Conn. 141, and *Mack* v. *Story*, 57 id. 407, 411. In neither of these cases was the defendant a purchaser, or one who had suffered loss from an apparent title in the conditional vendee. While in both cases, by the agreement between the vendor and vendee, the latter might for his bar trade use from the barrels of liquor which were sold to him, and afterwards attached by his creditors, it was not intended that the barrels of liquor themselves should be placed on sale.

These decisions were governed by the law peculiar to contracts of conditional sale, and only hold that as between the parties to those cases the condition in the contract of sale, that the title should remain in the vendor until the goods were paid for, was not rendered void by a provision giving to the vendee a right, as agent of the vendor, to transfer the latter's title. In the opinion in the first case it is said that if the contract of sale should be construed as authorizing the conditional vendee to sell as owner, such a provision would be inconsistent with the retention of title in the vendor. No case in this State has gone to the extent of holding, as was held in *Burbank* v. *Crooker*, 7 Gray, 158, 159, that the title of the vendor was superior to that of a *bona fide* purchaser from a conditional vendee clothed with an apparent authority to sell the goods as owner.

But in the case before us, the trial court having found that the goods were consigned to Ricciardelli & Bro. to be sold

by them as the plaintiff's agents, the transaction between the original parties was a bailment, and the case must be determined by applying to the facts the principles of the law of agency.

It must be conceded that it was not within the commission of Ricciardelli & Bro. to sell the entire quantity of goods to the defendant in the manner they did; and that, as they were not the owners of the goods, they had no title of their own to convey. Did they transfer to the defendant the title of the plaintiff? Or, in other words, is the plaintiff under the circumstances, estopped, as against the defendant, from denying the authority of his agents to sell the whole stock of goods to him?

These are the facts relevant to those questions : The plaintiff, who was a wholesale dealer in groceries in New York under the name of F. Romeo & Co., shipped to Ricciardelli & Bro., who under that name were engaged in the retail grocery business at New Haven, a lot of groceries of different varieties of the value of $559.57, upon consignment, to be sold by them at retail, *in their business as retail grocers in their store* at New Haven, as agents of the plaintiff. After the goods had been received by Ricciardelli & Bro. and had been placed in their store as a part of their stock, with nothing to distinguish them from the goods owned by them, or to indicate that they held them on any different terms, the defendant who had before learned that the store and business were for sale, after having visited the store, and examined it, and inquired about the character of Ricciardelli & Bro. and the store, in good faith purchased the business and entire stock for $965, which was not less than a reasonable price, and took possession of the same. Ricciardelli & Bro. absconded without having accounted to the plaintiff.

We cannot review the conclusion of the trial court that the defendant acted in good faith. He must be considered as an innocent third party, who, without knowledge or notice of the agency, dealt with Ricciardelli & Bro. as principals, and upon the belief that they were the owners of the goods. If that belief was a reasonable one under the circumstances and

was induced by the voluntary acts of the plaintiff, he rather then the defendant should suffer the consequences resulting from the fraudulent act of his agents and of his own misplaced confidence.

The authorities upon this subject are numerous. In the often cited case of *Pickering* v. *Busk*, 15 East, 37, the action was trover, and it appeared that one who was both a broker and also engaged in the hemp trade, purchased for the plaintiff, a merchant, a quantity of hemp which at the plaintiff's request was delivered to the broker, and upon the wharfinger's books was transferred from the name of the seller to that of the broker. The latter, without actual authority to sell, sold the hemp to the defendant's assignors for value. Lord Ellenborough, C. J., said: "I cannot subscribe to the doctrine, that a broker's engagements are necessarily, and in all cases, limited to his actual authority. . . . It is clear that he may bind his principal within the limits of the authority with which he has been apparently clothed by the principal in respect to the subject-matter. . . . The sale was made by a person who had all the *indicia* of property."

This court said in *Baldwin* v. *Porter*, 12 Conn. 473, 482: "It is a general principle, that no man can sell property or transfer title to that which he does not own; nor can one man's property, without his consent, be rendered subject to the demands of another. To this rule there are exceptions; but they are such as become necessary to protect innocent persons against fraud. . . . Therefore, it has been holden, that if the owner of goods voluntarily permit another to hold himself out to the world as being the true owner, and for this purpose, entrust him with the exclusive possession or other *indicia* of title, under circumstances which would naturally tend to mislead, he shall be concluded by the sale of it to an innocent and mistaken purchaser."

*Nixon* v. *Brown*, 57 N. H. 34, was an action of trover. An agent with the plaintiff's money purchased a horse for him, taking, without authority, a bill of sale in his own name. With knowledge of the facts, the plaintiff permitted him to go away with the horse and bill of sale. The agent having

sold the horse to the defendant, who purchased for cash and without notice of the agency, absconded. In sustaining the title of the defendant, Smith, J., said: "When the purchaser knows he is dealing with an agent, it is his duty to inquire into the nature and extent of the authority conferred by the principal, and to deal with the agent accordingly. But when the agency is not known, and the principal has clothed the agent with powers calculated to induce innocent third persons to believe that the agent owned the property, or had power to sell, the principal is bound, and strangers will not suffer."

The case of *Heath* v. *Stoddard*, 91 Me. 499, decided in 1898, was an action of replevin by the owner of a piano who had intrusted it with one Spencer, who was a dealer in pianos, to take it and leave it at the defendant's house, but without authority to sell it; the plaintiff himself to go there in a day or two and sell it if he could. The plaintiff had a verdict. We quote from the opinion of the Supreme Court sustaining defendant's exception to the charge of the trial judge. "A principal is not only bound by the acts of his agent, whether general or special, within the authority which he has actually given him, but he is also bound by his agent's acts within the apparent authority which the principal himself knowingly permits his agent to assume, or which he holds the agent out to the world as possessing. . . . Whether or not a principal is bound by the acts of his agent, when dealing with a third person who does not know the extent of his authority, depends, not so much upon the actual authority given or intended to be given by the principal, as upon the question, what did such third person, dealing with the agent, believe and have a right to believe as to the agent's authority, from the acts of the principal." Among the many other cases in which the same principle is applied are *Saltus* v. *Everett*, 20 Wend. 267, 268, *McNeil* v. *Tenth National Bank*, 46 N. Y. 325, *Barnard* v. *Campbell*, 58 id. 73, *Edwards* v. *Dooley*, 120 id. 540, *Locke* v. *Lewis*, 124 Mass. 1, *Hubbard* v. *Tenbrook*, 124 Pa. St. 291, and *Griggs* v. *Selden*, 58 Vt. 561.

The apparent authority of the agent which thus binds the

principal, beyond that actually conferred, must always be deduced from authorized acts of the agent, and from surrounding facts with a knowledge of which the principal is chargeable, and not from the acts of the agent himself in excess of his authority and of which the principal had no notice. The public may safely judge the agent's authority from the garb with which his principal has invested him, but not from that with which he has clothed himself. To intrust an agent or bailee with the mere possession of property does not give him an apparent authority to sell, nor will possession with power to sell always justify an inference of ownership in the agent. Whether an innocent third person may justly attribute to an agent powers which he does not possess, whether he may properly deal with him as a principal, or may treat one who is intrusted with both the possession and the power to sell as the owner of the goods, must depend to a great extent upon the facts peculiar to each case. Established customs, and usages of trade, the character of the agent's business, and the manner in which it is conducted, and other circumstances which ought to warn a prudent person against treating as owner, one who has the possession of personal property and who offers it for sale, often control the decision of particular cases.

In *Levi* v. *Booth*, 58 Md. 305, the owner of a valuable diamond ring placed it in the hands of a street peddler of articles of jewelry, and who had no established place of business, with authority to obtain a match for it, or failing in that, to procure an offer for it, but without authority to sell. The defendants who claimed to have purchased the ring of the peddler for cash and other goods, were pawnbrokers and dealers in jewelry, who had been in the habit of selling goods to the peddler on credit. Upon these facts a verdict for the plaintiff for the value of the ring in an action of trover was affirmed upon appeal.

In *Meldrum* v. *Snow*, 9 Pick. 441, 445, in sustaining the title of the brewers of certain casks of beer, against the attaching creditors of a retail dealer in whose hands the brewers had placed it to be sold in his retail trade, the court said, that the custom of poor persons, of taking beer to sell, appeared to be

so general, that the retailers would not be supposed to be the owners of the beer, and that therefore no injury could arise to their creditors. As a further reason for its decision, the court said: "It being beneficial to the community to introduce the use of beer, public policy would justify us in favoring the custom."

In the present case a small retail grocery business was carried on by two brothers, at an established place of business, under their own name of Ricciardelli & Bro. There was nothing to indicate that they did a commission business, or that they had goods in their store which did not belong to them, or that they acted as the agents of any one. On the contrary, by carrying on the business in their own names, in the manner in which such a business is ordinarily conducted, they held themselves out to the world, not only by selling the goods in their store as their own, but by the various ways in which the proprietorship of such a business is advertised, as the owners of the business and of the stock in trade in their store. With full knowledge of these facts, the plaintiff shipped to them a quantity of groceries to be placed by them in their store as a part of the stock of their said business, and to be sold by them in their said business at retail, in the same manner that they sold their own goods in their retail business. The authority thus conferred included, and doubtless contemplated, the right of Ricciardelli & Bro., not alone to sell the goods at retail, but, in the general conduct of their retail business, to hold themselves out as both having the right to sell and as having the full title to these goods as a part of their entire stock. The right of ownership and the right to sell are of course to be distinguished, but in the conduct of their retail business Ricciardelli & Bro. properly represented themselves as possessing both. If they were authorized in the conduct of their retail business to hold themselves out to the public as being the owners of their stock in trade, they were clothed with the power to lead people to believe that they had such a title as would enable them to sell the entire stock at one time. The defendant evidently purchased the goods, not in reliance upon an apparent right of Ricciardelli & Bro. to sell at retail, but upon the *indicia* of

ownership with which they were clothed by the plaintiff. The defendant visited the store and examined it, and inquired about the business and its proprietors.   He learned nothing to indicate that it was a commission or agency business, but everything to indicate that it was a retail grocery business, carried on in the ordinary manner; and that Ricciardelli & Bro. were the proprietors and owners of the business and stock.

I am of the opinion that the facts found show that the plaintiff voluntarily clothed his agents with the *indicia* of a full title to the goods in question; that the defendant had reasonable ground to believe that Ricciardelli & Bro. were the owners of the goods; that the plaintiff is estopped from denying the authority of his agents to sell to the defendant, and therefore that there was no error in the judgment of the Court of Common Pleas.

In this opinion ANDREWS, C. J., concurred.