JOHN A. ABEL ET AL. *vs.* ISADORE CHASE.

Third Judicial District, Bridgeport, April Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The common-law rule still prevails in this State, that an unauthorized sale by a factor of his principal's goods confers no title on an innocent purchaser for value, unless the principal ratifies the sale or by his own act has clothed the factor with an appearance of ownership beyond that involved in an ordinary contract of consignment.

In the present case the principal attacked his factor's sale to the defendant, upon the ground that a factor could not transfer his principal's goods as security for, or in satisfaction of, the factor's own antecedent debt. It appeared that the factor, in the usual course of his business, offered the article of jewelry in suit to the defendant for $300 and the cancellation of an indebtedness of $210 due from the factor to an estate upon which the defendant was administrator; and that the defendant accepted the offer and paid the whole price, $510, in cash: $300 to the factor and $210 to the estate. *Held* that under these circumstances the antecedent debt of the factor was not paid by a transfer of the principal's jewelry but was actually paid in cash, and therefore the plaintiff's attack upon the validity of the sale was not warranted by the facts.

Ignorance of a purchaser that the vendor was a mere factor and had the article upon consignment, will not protect him if the sale itself is unauthorized; but it will protect him against any charge of com-

plicity in a wrongful disposition by the factor of a part of the proceeds of an authorized sale, which was the only default, if any, that the facts disclosed in the present case.

Argued April 11th—decided June 2d, 1916.

ACTION to recover damages for the alleged conversion of an article of jewelry, brought to and tried by the District Court of Waterbury, *Meigs, Deputy-Judge;* facts found and judgment rendered for the defendant, and appeal by the plaintiffs. *No error.*

Plaintiffs are manufacturing jewelers in New York City, and on August 21st, 1914, delivered to one Zaslave, a retail peddler of jewelry in Waterbury and vicinity, who was accustomed to visit merchants and other people in order to display jewelry for sale, two diamond lavallieres on memorandum. The understanding and custom of the trade is that goods delivered on memorandum remain the property of the wholesaler until sold, that the retailer has the right and privilege to sell such articles to his customers and to return to the wholesaler any goods remaining unsold, and that such goods as are sold shall be charged to the account of the retailer. The memorandum upon which the articles in question were delivered to Zaslave contained the following statement: "The conditions of this memorandum bill are, that these goods remain our property and we reserve the right to charge the same to you or to have them returned to us. The limit of time for selection is five days from receipt of goods." Between August 21st and September 17th the plaintiffs made a number of demands upon Zaslave to return the goods, and he returned one of them, but was allowed to retain the other upon the statement that he had a customer for it.

Zaslave was indebted at the time in the sum of $210 to the estate of one Wiehn, and the defendant, Chase, was administrator upon the estate and acting

Abel *v.* Chase.

as such.   On September 17th Zaslave brought the article in question into the defendant's place of business and offered to sell it for the sum of $300 and the cancellation of the $210 which Zaslave owed the Wiehn estate.   The defendant accepted this offer and gave Zaslave his personal check for $300, turned over $210 to the Wiehn estate, and received a receipt for $510 from Zaslave.   Zaslave never paid the plaintiffs and they have never charged the article in question on their books to him; nor did they know that Zaslave had parted with the possession of the article until he filed a voluntary petition in bankruptcy toward the close of 1914.   Plaintiffs had no knowledge of the details of the transaction between Zaslave and the defendant, and immediately upon learning that the article was in the defendant's possession they demanded the same from the defendant and he refused to deliver it.

*James M. Lynch*, for the appellants (plaintiffs).

*Herman J. Weisman*, for the appellee (defendant).

BEACH, J.   In Connecticut the common-law rule still prevails that an unauthorized sale by a factor of his principal's goods confers no title on an innocent purchaser for value, unless the principal ratifies the sale, or by his own act has clothed the factor with an appearance of ownership beyond that involved in an ordinary contract of consignment.   *Romeo* v. *Martucci*, 72 Conn. 504, 45 Atl. 1, 99.   Under such a contract the factor, in the absence of trade usage to the contrary, has no right to dispose of the goods by barter or exchange (*Kearns* v. *Nickse*, 80 Conn. 23, 25, 66 Atl. 779) or by a sale or transfer otherwise than in the usual course of the business in which the factor is engaged. *Romeo* v. *Martucci*, 72 Conn. 504, 45 Atl. 1, 99.   In

this case the sale was in the usual course of Zaslave's business, as he was accustomed to visit prospective customers and display jewelry for sale.

The validity of the sale to the defendant is attacked principally on the ground that a factor cannot transfer the principal's goods as security for, or in satisfaction of, his own antecedent debt. In *Warner* v. *Martin*, 52 U. S. (11 How.) 209, 226, a creditor, to protect himself, had taken certain property from a factor with knowledge that the latter was about to fail, and the court said: "When such a transfer of property is made by a factor for his debt, it is a departure from the usage of the trade, known as well by the creditor as it is by the factor. It is more; it is a violation of all that a factor contracts to do with the property of his principal. It has been given to him to sell. He may sell for cash, or he may do so upon credit, as may be the usage of trade. A transfer for an antecedent debt is not doing one thing or the other."

In our opinion, however, the facts in this case do not warrant the conclusion that the article in question was transferred to the defendant in satisfaction of an antecedent debt. The finding is that Zaslave offered the article to the defendant "for the sum of $300 and the cancellation of the $210 which the said Zaslave owed the Wiehn estate." The defendant accepted the offer and paid the whole price, $510, in cash; $300 to Zaslave and $210 to the administrator of the Wiehn estate. It is of no legal importance that the defendant himself was the administrator of the Wiehn estate, or that at Zaslave's request he paid $210 of the purchase price to that estate instead of paying it to Zaslave upon the latter's promise to pay it to that estate. The point is that the antecedent debt of Zaslave to the Wiehn estate was not satisfied by the transfer of the property to the defendant, but was actually paid in

cash. It may be added that the defendant in paying it acted at Zaslave's request and as Zaslave's agent.

It is claimed that Zaslave had no authority to sell unless he received cash, at least to the amount of the agreed wholesale price of the article; but this is not so found. For all that appears he might have sold wholly or partly on credit. If Zaslave exceeded his authority at all, it was not in selling the article for $510, but in offering to use, and in directing the defendant to use, a part of the purchase price to satisfy his debt to the Wiehn estate; and for such a default—if it be one— the defendant cannot be accountable, because it is found that he had no knowledge that Zaslave had the article on consignment. Ignorance of that fact would not protect him if the sale itself had been unauthorized; but it will protect him against any charge of complicity in an alleged wrongful disposition by Zaslave of a part of the proceeds of an authorized sale.

There is no error.

In this opinion the other judges concurred.