Thomas F. O'Keefe *vs.* The Elmer Automobile Company of Winsted, Incorporated, et al.

First Judicial District, Hartford, October Term, 1930.

Wheeler, C. J., Maltbie, Haines, Hinman and Banks, Js.

Argued October 9th—decided November 29th, 1930.

*Frank Covello,* for the appellant (defendant Elmer).

*Henry H. Hunt,* for the appellee (plaintiff).

HAINES, J. The plaintiff, a former employee of the defendant company, was awarded compensation from and after December 11th, 1925, for five hundred and twenty weeks at $17.50 per week, for an injury under the provisions of the Workmen's Compensation Act, by the commissioner for the fifth district on October 29th, 1926. The defendant company was a corporation organized by the defendant Lucius H. Elmer of Hartford, for the purpose of· conducting in Winsted, the business of handling Ford cars and accessories. He owned $8900 of the $10,000 of capital stock, the plaintiff owning $1000 and the remaining $100 was owned by a third party.

The last payment under the award was made to April 2d, 1927, the check therefor being signed by the defendant Elmer as president of the defendant company, and further payments have since been refused. This refusal as appears from the answer of

the defendant Elmer, was based upon his claim that the sum of the payments made to that date exceeded the value of the company's interest in the property under an attachment which the plaintiff had made to secure his claim against the company. Upon the application of the plaintiff, the commissioner of the fifth district had issued a writ of attachment for $10,000 which was served June 16th, 1926, the officer's return thereon showing that he had taken into his possession under the mandate of the writ, and as the property of the company, various automobiles and auto parts and other personal property, which he locked in certain buildings theretofore occupied by the company in Winsted. Shortly after, on the same day, and before he had an opportunity to make an inventory of the attached property, he was solicited by the defendant Elmer to release the property at once and accept a bond therefor signed by the defendant company as principal and the defendant Elmer as surety, and this was done. It is upon this bond that the present action is brought. The defendant Elmer made no claim to the officer that any of the attached property was not the property of the defendant company, but one of his main contentions in the present action is that some of the machines attached were lawfully consigned to the company by, and belonged to, the defendant Elmer personally. He further claims that the plaintiff cannot recover in this action because no demand was made upon him and no execution issued for any unpaid compensation, and that the compensation payments accrued more than sixty days after the date of the award; because no demand was made upon him or execution issued for the award before this suit was brought, and finally that the attachment of the automobile parts was invalid because of the failure of the officer to make an inventory thereof.

It is contended that the evidence as certified requires certain changes in the findings of fact. A careful study of these claims shows that, with the exception of a part of paragraph fifteen, no permissible changes can have any controlling influence upon the vital issues of the case. Save for the exception noted, we find the essential facts as they appear in the finding, are all supported, either by direct evidence which the trial court could reasonably accept as true, or are logical and reasonable inferences from the evidence. There are certain facts in the finding which are not so clearly supported, but these are all of minor importance and may be ignored. The portion of paragraph fifteen to which we have referred, states that the plaintiff "took out an execution to enforce payment of the amounts due under said compensation award on the 21st day of July, 1927." We can find no testimony of this character and no evidence has been called to our attention by counsel, to support it. Accordingly we strike out this portion of paragraph fifteen. The evidence justifies the addition of paragraph twenty of the draft-finding, which reads: "Pursuant to said judgment, the defendant Lucius H. Elmer paid medical expenses of $224; and paid to the plaintiff compensation from the date of said accident to April 2d, 1927, at the rate of $17.50 per week, in all $1,411."

The finding says that the defendant Elmer was conducting business in Hartford as an individual under the title of Elmer Automobile Company. The exhibits show, by this company's letterheads, that he had "branch stores" in ten different towns in the State, one of which was the defendant company, and the business of the latter was largely the handling of automobiles sent from the Hartford store.

Payments to the plaintiff ceased April 2d, 1927. The plaintiff and the defendant Elmer had had unsuc-

cessful negotiations for a settlement of the compensation claim in 1926 and thereafter in May of that year, as shown by the exhibits, some cars were shipped to the defendant company with the word "Consigned" written on the bills. These bills are addressed to the defendant company and refer to the cars listed thereon as "Bought of the Elmer Automobile Company." The trial court found that this was a sale and not a bailment and that the title was in the defendant company at the time of the attachment. This finding being attacked, we find upon examination of the evidence, that after the failure of the negotiations between the plaintiff and the defendant Elmer, the plaintiff announced that he would bring a suit within two days if a settlement was not made. Seven cars and a tractor were forwarded to the defendant company from the Hartford store and billed as above. These cars were among those attached. Defendant Elmer testified that the manager of the defendant company was advised before the cars were shipped, that they would be on consignment, and asked the reason, replied, "Simply because, so that if there was a suit brought, why he could tell the sheriff that they were our cars." The record of the fact that these cars were on consignment, if it appeared at all, was only on the books of the Hartford store. It does not appear that the cars were marked or kept separate in any way from other property of the defendant company, or that the sheriff had any means of knowing that they were claimed to be on consignment. Asked whether, in his talk with the officer before the bond was accepted, he told him the cars were on consignment, the defendant Elmer replied, "No, sir, for the reason that he didn't ask me." Asked what he was required to do with the money received from the sale of consigned cars, the manager of the defendant company answered, "Why, the money was

banked in Winsted the same as the rest of the money was." In the light of this and other evidence with its reasonable implications, the trial court clearly considered that the attempted consignment lacked the essential elements of good faith and was a mere subterfuge, and therefore held that the title was in the defendant company at the time of the attachment. We cannot say that the court did not have reasonable ground for this conclusion. *Harris* v. *Coe*, 71 Conn. 157, 163, 41 Atl. 552. While possession by a person to whom goods are sent is not inconsistent with the relationship of consignment, there are considerations affecting the conduct of the person sending them which may be inconsistent. Of this character is the act of billing the goods claimed to be consigned, as goods sold, or, generally, where the person sending them does that which is misleading as to the real nature of the transaction. *Romeo* v. *Martucci*, 72 Conn. 504, 510, 45 Atl. 1, 99. The record shows that thirteen machines were under attachment besides certain used trucks and other personal property and a large amount of automobile parts, and there was evidence which the court could reasonably have believed that the parts alone were then worth approximately $3000. The conclusion of the trial court, therefore, that the interest of the defendant company in these goods under attachment, was in excess of $4000 at the time the bond was given, must be sustained. This interest is thus conclusively shown to have been more than the total amount theretofore paid to the plaintiff as shown by the amended pleading, and the claim of the defendant Elmer in that regard cannot be sustained.

It further appears from the finding that subsequent to the attachment all the books and papers of the defendant company were removed from Winsted to the possession of the defendant Elmer at Hartford, and

that at the time the payments ceased, April 2d, 1927, the defendant company was solvent, but was thereafter rendered insolvent by the sale of its assets and by turning over to the defendant Elmer $3885.31 in cash as a dividend upon his stock.

The defendant Elmer denies that he is liable as surety upon this bond, first, because the attachment was invalid by reason of the officer's failure to inventory the property, and second, because the plaintiff did not make demand or take out execution upon the award within sixty days from the date of the award. The finding shows the reason why the officer did not make an inventory was that the defendant Elmer at once offered a bond in substitution for the property, and desired him to release the attachment and surrender possession of the property immediately, which was done. As the moving party to this agreement the defendant Elmer may not now set up the officer's failure to make an inventory, so as to defeat the attachment; moreover, under the terms of the bond the defendant is estopped to deny that there was a valid attachment. *Safford* v. *McNeil*, 102 Conn. 684, 691, 129 Atl. 721; *Birdsall* v. *Wheeler*, 58 Conn. 429, 20 Atl. 607.

The question presented by the second claim is of greater difficulty. The claim is that, in view of the statute, this attachment and the bond given to release it, must be governed by the same rules which govern attachments in ordinary civil actions. The controlling statutory provisions are: "If no appeal from his [the commissioner's] decision shall be taken by either party within ten days thereafter, such finding and award shall be final and may be enforced in the same manner as a judgment of the Superior Court. The Superior Court is authorized to issue execution upon any uncontested or final award of a commissioner in the same

manner as in cases of judgments rendered in the Superior Court." General Statutes, § 5251. "When any person shall present in writing to the commissioner a claim for compensation, either for injury sustained by himself arising out of and in course of his employment or for injury resulting in the death of some person of whom he is an alleged dependent, he may ask that a writ of attachment issue to secure the payment of such claim or claims for compensation as may arise out of such injury. . . . such commissioner may issue a writ of attachment in the manner and form of writs of attachment in civil actions and shall be vested with the same jurisdiction as authorities authorized to issue writs of attachment in civil actions. . . . The several compensation commissioners are vested with the authority of the various courts to dissolve attachments made under the authority hereinbefore conferred." General Statutes, § 5265. "No estate which has been attached shall be held to respond to the judgment obtained in the suit, either against the debtor or any other creditor, unless the judgment creditor shall take out an execution and have it levied on the personal estate attached . . . within sixty days after final judgment. . . . In reckoning said periods within which the attaching creditor is so required to take out and levy execution, any time during which the issue or levy of an execution may be prevented or stayed by the pendency of a writ of error, or by an injunction or other legal stay of execution, shall be excluded from the computation." General Statutes, § 5762.

Briefly stated, the affirmative argument is that this award rendered under § 5251 was a "final judgment" and that this attachment made under § 5265 is limited in its duration by § 5762 to sixty days after the date of the award. The latter section does provide that the

"judgment creditor" shall take out execution and levy it within sixty days after "final judgment." It is true that, no appeal having been taken by either party within ten days from its date, the finding and award thereupon becomes final. This manifestly means that it is not subject to review by an appellate court and becomes conclusive upon the parties and is fixed and determined in its terms, so to remain until upon formal application and hearing it is modified for cause named in the Act, by the same authority that pronounced it. For this purpose the commissioner retains jurisdiction during the whole compensation period. General Statutes, § 5240; *Saddlemire* v. *American Bridge Co.*, 94 Conn. 618, 624 *et seq.*, 110 Atl. 611; *Storms* v. *New Departure Mfg. Co.*, 97 Conn. 332, 335, 116 Atl. 611; *Grabowski* v. *Miskell*, 97 Conn. 76, 82, 83, 115 Atl. 691. While therefore the award is final it is so only in the sense we have indicated. It is purely a creation of statute, subject to modification at any time during the period of the award, and "there is nothing about it which has the finality of a judgment." *Saddlemire* v. *American Bridge Co., supra; Storms* v. *New Departure Mfg. Co., supra*. It follows of necessity that the award, upon the date of its entry, was not a "final award" within the meaning of the law and of § 5762. Being subject to modification by reason of a change of circumstances, it is not on that date, a final determination of the contention between the parties or an absolute money judgment which conclusively fixes the amount which the debtor must pay. However, if the award remains unmodified to the end of the compensation period, it will then become absolute both as to the contention of the parties and as to the exact amount required of the debtor, and thus for the first time meet the definition of a final judgment. The only logical construction we can put upon the statute therefore is

that "final judgment" as there used must refer to the award as it stands at the end of the compensation period and the sixty-day limitation must be computed from that date. We have good reason to hold that this will meet the underlying intent of the legislature, for the claimant is given the privilege of an attachment for the expressed purpose "to secure payments of such claim or claims for compensation as may arise out of . . . the injury." The award, at the end of the compensation period, if unmodified, in this case will have called for $9100 and the attachment was for $10,000. It was obviously intended therefore that the attachment should cover the entire award. If it be said that an attachment thus made, which may continue for five hundred and twenty weeks is unreasonable and oppressive, the answer must be that there is no statutory provision to cover such a situation save that a bond may be substituted and the property released. That relief is entirely adequate in this case and has been availed of by the defendant. The interpretation put upon the statute by the defendant would defeat the essential purpose of the attachment which is provided by the Compensation Act. The attachment was made June 16th, 1926, and the award on October 29th, 1926. If execution were required within sixty days from the latter date, as he claims, this expired December 28th, 1926, and during all this period payments were being made in accordance with the terms of the award, and until after April 2d, 1927, there was no unpaid portion of the award which was due and which an execution could be made to satisfy. We therefore hold that the award becomes a final judgment only at the end of the compensation period; or when so modified as to fix a definite sum of money as due from the debtor and presently payable, as e. g. if the award be commuted to a specific sum so payable, and the sixty-day limita-

tion begins to run from the date when such fixed sum does become due and payable. Ordinarily, a final judgment for a definite sum of money presently payable, is an entirety and a judgment creditor cannot divide it and take out separate executions for different portions of it. *Davis* v. *Ferguson,* 148 Mass. 603, 20 N. E. 311; *Weiss* v. *Chambers,* 50 Mich. 158, 15 N. W. 63; *Sheridan* v. *Forsee,* 114 Mo. App. 588, 90 S. W. 120. See, generally, 23 Corpus Juris, pp. 315-317. The reason for this rule obviously is that since the whole amount is due, the judgment creditor should not be permitted to vex and harass the judgment debtor by resorting to his remedy piecemeal when the right to recover the whole is open to him. This reasoning does not apply in a case like the present, and to deny the claimant an execution to recover such of the payments as have matured, would be to deny him the very security which the attachment was intended to give. We must therefore assume that it was within the legislative intent to permit an execution at any time within the compensation period and for sixty days thereafter, for the recovery of such payments as have then become absolutely due and payable.

If in this case, an execution had been issued and a demand made by the officer and the demand refused, there would have been a sound basis for the recovery of the amount so due and demanded. It was alleged in the complaint that there was such demand and execution and it was denied in the answer, thus throwing the burden of proof upon the plaintiff, but the finding, as we have been obliged to amend it, does not support the plaintiff's allegation. There is therefore no basis on the present record for a judgment. The interpretation we have put upon this statute, however, makes it possible for the plaintiff, at any time within the limitation above indicated, to take out execution

and make demand for any or all weekly payments which are due and unpaid to that time, and, upon refusal of payment, suit upon the bond as in this case will lie for the recovery of that amount.

There is error, the judgment is set aside and the Superior Court directed to enter a judgment for the defendant.

In this opinion the other judges concurred.