THE VICTOR SEWING MACHINE COMPANY and another vs. HELLER.

AGENCY: FACTOR'S ACT. *(1, 2) Agent to sell; his power to barter or to pledge for his own indebtedness.*
PRACTICE: VERDICT. *(3) Power to correct form of verdict after its delivery.*

1. Neither by the common law nor under any statute of this state, can a person intrusted with merchandise simply as an agent for the sale thereof,

dispose of it by *barter* to one who knows the goods bartered for to be for the agent's own use, or pledge it for his own indebtedness for goods sold to him as for his own use.

2. Sec. 3, ch. 91 of 1863, which provides that a factor or agent, not having the documentary evidence of title, who shall be intrusted with the possession of any merchandise for the purpose of sale, etc., shall be deemed the true owner thereof so far as to give validity to any contract made by him with any other person for the sale or disposition of such merchandise " for any *money advanced, or negotiable instrument or other obligation in writing given*, by such other person on the faith thereof," is inapplicable in terms to the case above stated; and, being in derogation of the common law, must be strictly construed. *Price v. Wis. M. & F. Ins. Co.*, 43 Wis., 267, distinguished.

3. After the delivery of the verdict, the judge told the jurors that they were discharged; but immediately thereafter, before they had left their seats or communicated with any one, he called their attention to imperfections in the verdict, and put it into the form which the jurors affirmed they intended, and, as amended, it was signed by the foreman, and declared by the jury to be their verdict. *Held*, no error, where it was clear that the verdict as finally entered was the one intended by the informal one first delivered.

APPEAL from the Circuit Court for *Chippewa* County.

Replevin, for a sewing machine. The essential facts are thus stated by Mr. Justice TAYLOR in his opinion as originally prepared:

" The evidence shows that one W. H. Lyman was employed as the agent of the plaintiffs in the spring of 1873, for selling the Victor Sewing Machine in a part of Chippewa county, including Chippewa Falls; that the plaintiffs were not doing business at that time in Chippewa Falls, except by said Lyman as agent; that sometime in the spring of 1873, Lyman bargained with the defendant for the sale of a sewing machine, and, after several unsuccessful attempts, a machine was left with the defendant, under the following circumstances: The defendant purchased the machine conditionally, to be paid for in full, if, after trial, it suited him. At the time of the purchase, he sold the agent, out of his store, goods to the amount of $24 or $25, which were received by the agent in part pay-

The Victor Sewing Machine Co. and another vs. Heller.

ment for the machine; but if, upon trial, it did not suit the defendant, he was to return it, and the agent was to pay for the goods so taken in part payment. The agent, Lyman, makes a slightly different statement in regard to it. He says: 'I bought of defendant a bill of goods, about $21, and he requested me to leave this machine with him until the goods were paid for; and I made a written agreement between myself and the defendant to that effect. These goods were to pay in part for the machine, if it proved satisfactory to him. He did not like the machine, and notified me to take it away, which I agreed to do as soon as I had money to pay for the goods.' Again Lyman says: 'It was more as a pledge for the goods purchased of him, than a sale; though it might lead to a sale if an agreement could be had.'

"The evidence also shows that the defendant was, at the time, selling dry goods, groceries and fancy goods at Chippewa Falls; and that the agent, Lyman, in addition to his agency for the plaintiffs, was keeping a dollar store at the same place. Both the agent and the defendant understood that, in case the machine did not suit the defendant, he was to hold the same as security until the goods were paid for by the agent.

"The court instructed the jury as follows: 'If the plaintiffs employ an agent to sell their property, and if the evidence shows no more as to the agent's power or authority, there certainly cannot be claimed for the agent, on that alone, any right, as against his principal, either to pledge the property as security for the agent's debt, or to transfer the property in payment for goods bought for himself and for his own use; and any person who, in any such transaction, deals or treats with the agent, *knowing him only as agent to sell, without other powers*, and under such a transaction receives the principal's property from the agent, will have no right in law to keep the same as against the principal.'

"'So if you find, from the evidence, that the man Lyman

either left the sewing machine in question with the defendant as a pledge or security for Lyman's own debt to the defendant, or in consideration of goods sold by the defendant to Lyman, the defendant at the same time *understanding, with reference to the relations between Lyman and the plaintiffs, simply that Lyman was authorized to sell sewing machines for them,* you must conclude that the defendant acquired thereby no right to the machine, or to the possession thereof; and from the time that the machine was detained by the defendant under any such transaction between him and the agent, Lyman, he, the defendant, must be regarded as holding the machine adversely to the plaintiffs, and as converting it to his own use.' To these charges the defendant duly excepted."

The damages claimed by the complaint, for the detention of the property, were fifty dollars. The jury were instructed that the damages for the detention would consist of interest on the value of the property from the time of its detention.

The verdict, as originally brought into court, was: "We, the jurors, find for the plaintiffs, that they are the owners of the property mentioned in the complaint, and entitled to the possession thereof; that the value thereof is $75, with interest at the rate of seven per cent. for two years."

After receiving the verdict, sending it to the clerk, having it read to the jury, asking them if it was their verdict, and receiving an affirmative reply, the court informed the jury that they were discharged from further consideration of the case; "but in a few minutes afterwards, while the jury were yet in their seats and before they had separated or communicated with any one, the court called their attention to their verdict, and asked them what they meant by the clause as to interest, and one of them stated that their intention by that clause was to award plaintiffs damages for detention at the sum of the interest on $75 for two years at seven per cent.; and thereupon, the jury being questioned by the court, all the rest declared that such was their intention." Thereupon the court, on mo-

The Victor Sewing Machine Co. and another vs. Heller.

tion of plaintiffs' counsel, directed a verdict in conformity with such intention; and the following verdict was drawn up, signed by the foreman, declared by all the jurors to be their verdict, and entered as such: "We, the jury, find for the plaintiffs, that they are the owners of the property mentioned in the complaint, and entitled to the possession thereof; that the value thereof is seventy-five dollars ($75); that the same was wrongfully taken and unjustly detained by the defendant; and assess the damages for the detention at the amount of the interest on said value for two years at seven per cent. per annum, to wit: $10.50."

From a judgment pursuant to the verdict, the defendant appealed.

*Arthur Gough*, for the appellant, contended, among other things, 1. That there was a conditional sale of the sewing machine, and that no return of it could be enforced without a return of the consideration received for it by the agent. 2. That whether the transaction was a sale or a pledge, it was protected by the statute (Tay. Stats., 1755–6, §§ 56–58). *Navulshaw v. Brownrigg*, 2 DeG., M. & G., 441; *Portalis v. Tetley*, L. R., 5 Eq. Cas., 146; *Shepard v. Union Bank*, 31 Law Jour., Exch., 154; *Baines v. Swainson*, 32 id., Q. B., 281; *Domestic S. M. Co. v. Anderson*, 23 Minn., 57. 3. That the judgment should be reversed because based upon a pretended verdict made up after the jury were discharged. Proffatt on Jury Trials, §§ 456, 461; 48 Me., 394; *Warner v. Railroad Co.*, 52 N. Y., 437; *Sargent v. The State*, 11 Ohio, 472; *Hewson v. Saffin*, 7 id., 2d part, 232; *Hammer v. McConnell*, 2 id., 31 (old series, p. 275); *Rigg v. Cook*, 4 Gilm., 336; *Miller v. Hoc*, 1 Florida, 189; *Seitle v. Alison*, 8 Ga., 201; 2 Ala., 744.

The cause was submitted for the respondent on the brief of *Joseph S. Carr*. He contended, among other things, 1. That the verdict, even in its first form, would sustain the judgment. The jury intended by it to assess the damages at seven per cent. per annum upon the value of the property. "If the

court, by applying their language to the issue, can see that they intended to decide every question necessary to be decided, that is all that is essential." *Everit v. Walworth Co. Bank*, 13 Wis., 419, and cases there cited. 2. That there was no error in perfecting the form of the verdict. Where the jury find a general verdict in replevin, the court may put it in proper form. *Donaldson v. Johnson*, 2 Chand., 160; *Everit v. Bank, supra; Jolly v. Single*, 16 Wis., 280; *Sleight v. Henning*, 12 Mich., 377; *Baker v. Rand*, 13 Barb., 153. Though the court informed the jury that they were discharged, yet it recalled the discharge, and required them to amend their verdict according to their finding, before they separated. In this there was no error. *High v. Johnson*, 28 Wis., 73, and cases there cited; *Wells v. Cox*, 1 Daly, 515; 1 Burrill's Pr., 238.

TAYLOR, J. The instructions above recited were undoubtedly correct, if the powers of an agent for the sale of personal property are to be governed by the rules of the common law, wholly unaffected by the statutes of this state relating to factors and agents entrusted with the possession of property for the purpose of sale. This act has recently been under consideration in this court, and, after most learned and exhaustive arguments by counsel on both sides, this court has given a construction to a portion of that statute. The case referred to is *Price v. The Wisconsin Marine & Fire Insurance Co.*, 43 Wis., 267. In this case the learned chief justice has reviewed the decisions made under similar statutes, both in New York and England, and has, we think, most clearly shown that this court cannot follow the decisions of the courts of New York in its construction of this statute, without substantially repealing the same by judicial construction. The conclusions arrived at by the chief justice in that case are fully concurred in by all the present members of this court. In that case the question was as to the rights acquired by the pledgee in case

of a pledge of a negotiable warehouse receipt by a factor, to whom it had been transferred by his principal, or whom his principal had empowered to purchase and retain it; and the conclusion arrived at was, that in such case the principal entrusts his factor with the power to pledge, as well as to sell, in favor of one dealing in good faith with the factor; that notice that the holder of such warehouse receipt holds it as a factor, is not notice of any limit of the factor's power of disposition by sale or pledge, as between the factor and his principal; and that a factor's sale or pledge of such receipt in violation of his instructions will not bind his principal, if the vendee or pledgee has notice that the factor holds his title for a principal, and sells or pledges in violation of the instructions of the principal.

The acts under consideration, in the case above cited, were sec. 6, ch. 340, Laws of 1860, as amended by sec. 1, ch. 73, Laws of 1863, and sec. 3, ch. 91, Laws of 1863. Sec. 6, ch. 340, Laws of 1860, as amended, provides, amongst other things, "that warehouse receipts, for goods, etc., may be transferred by delivery, with or without indorsement thereof; and any person to whom the same may be so transferred, shall be deemed and taken to be the owner of the goods, etc., therein specified, *so far as to give validity to any pledge, lien or transfer made or created by such person or persons.*" Sec. 3, ch. 91, Laws of 1863, provides, "that every factor or other agent entrusted with the possession of any bill of lading, custom-house permit, or warehouse-keeper's receipt, for the delivery of any such merchandise [referring to merchandise shipped as mentioned in the preceding sections of the chapter], *and every such factor or agent not having the documentary evidence of title,* who shall be entrusted with the possession of any merchandise for the purpose of sale, or as security for any advances to be made or obtained thereon, shall be deemed to be the true owner thereof, *so far as to give validity to any contract made by such agent with any other person for the sale*

*or disposition of the whole or any part of such merchandise, for any money advanced, or negotiable instrument or other obligation in writing given, by such other person upon the faith thereof.*"

It is insisted by the appellant, that the evidence in this case brings it within the protection of sec. 3, ch. 91, Laws of 1863, above quoted, and consequently the instructions given by the circuit judge were erroneous. We do not think so. It will be seen, by an examination of the provisions of the acts above cited, that a factor or other person holding a negotiable warehouse receipt by transfer, either with or without indorsement, shall be deemed and taken to be the owner of the goods, etc., therein specified, "*so far as to give validity to any pledge, lien or transfer made or created by such person or persons;*" and that a factor or other agent who is entrusted with the possession of any merchandise for the purpose of sale, or as security for any advances to be made or obtained thereon, "shall be deemed the true owner thereof, so far as to give validity to any contract made by such agent with any other person for the sale or disposition of the whole or any part of such merchandise, *for any money advanced, or negotiable instrument or other obligation in writing given, by such other person upon the faith thereof.*"

The two sections are materially different. Under the first, any pledge, lien or transfer, made by the holder of the receipt, is made valid; whereas, under the second, the contract of the agent is made valid so far only as to protect the person dealing with such agent, "*for any money advanced, or negotiable instrument or other obligation in writing given*, by such other person."

The case of *Price v. The Wisconsin Marine & Fire Insurance Co.*, cited above, was a case arising under sec. 6, ch. 340, as amended by sec. 1, ch. 73, Laws of 1863, and was the case of a pledge for money advanced, and was protected even under the provisions of sec. 3, ch. 91, Laws of 1863. The case

at bar must come within the provisions of sec. 3, ch. 91, Laws of 1863, to be protected at all.

The provision of sec. 3, ch. 91, Laws of 1863, is in derogation of the common law, and, when construed as applicable to a person who deals with a person knowing him to be an agent for another, has always been construed, to say the least, not liberally in favor of such person. It appears to us that, under any fair construction of this section, a person who *barters* with an agent is not protected thereby. He cannot be said to have advanced *money* upon the faith of the property received. The particular words used in the statute exclude the idea that a barter with the agent can be protected. It would seem that the legislature did not intend to protect a man dealing with an agent to sell, who deals with him in a way which he is presumed to know is in violation of his contract with his principal.

The evidence in the case simply shows that Lyman was the agent of the plaintiff to sell machines. No evidence was given to show the powers of the agent, other than this general statement of his agency. It was not shown, or attempted to be shown, that the agent had power to barter away the machines, or that he had, in fact, been accustomed to barter the machines, either with or without the knowledge or assent of his principals; and no evidence was given to show that the agent had any lien on this or any other machines in his possession, either for commissions or for money advanced thereon. The case, as presented, was either simply a pledge by the agent to secure a debt of his own, or a conditional sale or exchange, and part payment made in goods sold to the agent, the payment for such goods to be secured by pledge of the machine in case the defendant was not satisfied with it. As the proof shows, he was not satisfied with the machine, refused to pay for the same, and notified the agent to take it away. He held the same, at the time of the commencement of this action, as a pledge for the goods sold to the agent. This he clearly had no right to

do.   The instructions given by the circuit court were not, therefore, erroneous.

We do not think there was any error committed by the court with respect to the verdict.   It is true, the record shows that the judge, after the delivery of the verdict, said to the jurors that they were discharged; but immediately thereafter, before they had left their seats or communicated with any one, the judge called their attention to the imperfections in the verdict, and, having put the same in the form in which the jurors affirmed they intended it to be, it was signed by the foreman, and, as so amended, declared by the jury to be their verdict. The judges of the circuit courts are frequently called upon to perform a work of this kind.   Jurors, unacquainted with the forms of law, very often deliver very informal verdicts; and, where their intentions are clearly indicated by such informal verdict, it becomes the duty of the court to put it in proper form before it is entered as the verdict of the jury.   It is in furtherance of justice that the judge should do so.   When it is clear that the verdict, as finally put in form by the court, is the one intended by the informal one delivered by the jury at first, no injustice is done to the parties, if, after the same is so put in formal shape, the jury, without further consultation, and without again retiring to consult, assent to the entry thereof.

· *By the Court.* — The judgment of the circuit court is affirmed.

RYAN, C. J., and LYON, J., took no part.