FOERDERER v. TRADESMEN'S NAT. BANK OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. February 27, 1901.)

No. 85.

FACTORS—SALE—VALIDITY—BONA FIDE PURCHASER—FACTOR'S ACT—CONVERSION.

J. & Co., factors in Pennsylvania, received a consignment of wool from another Pennsylvania factor, and made advances without notice that their consignor was not the actual owner. J. & Co. shipped the wool to Massachusetts, to purchasers; but, before delivery, defendant seized the same in replevin, and, being unsuccessful in the suit, defendant elected to hold the wool and pay its full value, with damages, under a stipulation with J. & Co.; whereupon plaintiff, the original owner, brought trover for its conversion. Held, that the stipulation amounted to a sale, which J. & Co.'s consignors had a right to make under Pennsylvania Factor's Act, § 3, declaring that, where a factor disposes of or pledges property in his possession as security for advances, the transferee acquires the title; and hence defendant acquired a good title to the wool from J. & Co., and plaintiff could not recover.

In Error to the Circuit Court of the United States for the Southern District of New York.

N. Dubois Miller, for plaintiff in error.
John J. Adams, for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. Error is assigned of the ruling of the trial judge in directing a verdict for the defendant.

The action was in trover, brought to recover for the conversion of certain bales of wool; and the facts proved upon the trial, so far as they are material for present purposes, were these: The plaintiff made an agreement with the Keen-Sutterle Company, a corporation doing business as commission merchants at Philadelphia, by which the corporation was to import and sell wool on his account for a stated commission; the wool to be bought abroad upon a credit to be provided at London by the plaintiff. The wool in controversy (277 bales) arrived at Philadelphia in September, 1895, and was delivered into the possession of the Keen-Sutterle Company; the bills of lading and invoices for the same having been indorsed to that corporation. Shortly afterwards the Keen-Sutterle Company consigned the wool for sale to Jagode & Co., commission merchants doing business at Philadelphia; the latter making advances to the Keen-Sutterle Company on the wool at the time it was delivered into their possession for about 75 or 80 per cent. of its value. In taking the consignment and making the advances, Jagode & Co. acted in good faith, and without any notice, by document or otherwise, that the Keen-Sutterle Company was not the real owner of

the wool. Subsequently the Keen-Sutterle Company failed, and thereafter Jagode & Co. sold the wool and shipped it to purchasers in Massachusetts. While the wool was in transit it was seized by a writ of replevin in an action brought by the defendant, the Tradesmen's National Bank of New York; the latter claiming title thereto under certain warehouse receipts. Jagode & Co. interposed an answer in the action setting up their title, but before the action came to trial the bank ascertained that its receipts did not cover the bales in controversy, and thereupon entered into a stipulation with Jagode & Co. that judgment be entered in the action for the return of the goods described in the writ of replevin, and in lieu thereof for the payment to Jagode & Co. of the value of the wool, with damages for detention. Judgment was accordingly entered to that effect by the court. The Tradesmen's National Bank elected to retain the wool, and paid to Jagode & Co. the sum of $25,105,—the stipulated value and damages. Thereafter the bank sold the wool, and the present action was brought.

Were it not for the factor's act of the state of Pennsylvania, it would be entirely clear that neither Jagode & Co. nor the defendant could be protected under any title derived from the Keen-Sutterle Company. A factor is an agent for the owner of the goods consigned, and must observe the instructions of his principal in respect to them, whether express or implied, and cannot deal with the property as his own. In the absence of instructions to the contrary, he is empowered to sell the goods of his principal according to the usage of the trade. Upon a sale made by the factor conformably to his authority, the principal is devested of his title in the goods, and the title passes to the purchaser. He has a lien upon the goods while they are in his possession for his advances and commissions, and upon the proceeds of the sale. He has no authority to use or pledge them for his own benefit, except for the purpose of reimbursing himself when the principal, after reasonable notice and demand, fails to repay his advances. He cannot ordinarily bind his principal by a disposition of the goods not made in the usual course of business. Bank v. Heilbronner, 108 N. Y. 439, 15 N. E. 701; Easton v. Clark, 35 N. Y. 225; Romeo v. Martucci (Conn.) 45 Atl. 1. He must sell in the market where he transacts business. Catlin v. Bell, 4 Camp. 183; Marr v. Barrett, 41 Me. 403. He cannot sell by way of barter. Guerreiro v. Peile, 3 Barn. & Ald. 616–618; Biggs v. Evans [1894] 1 Q. B. Div. 88; Machine Co. v. Heller, 44 Wis. 265; Potter v. Dennison, 10 Ill. 590. If he makes an unauthorized disposition of the goods, his lien is lost; and such a disposition of them does not transfer any right as against the principal, even to the extent of the lien. McCombie v. Davies, 7 East, 5; Graham v. Dyster, 6 Maule & S. 1. As Chancellor Kent says:

"The principal is not even obliged to tender to the pawnee the balance due from the principal to the factor; for the lien which the factor might have had for such balance is personal, and cannot be transferred by his tortious act in pledging the goods for his own gain." 2 Kent, Comm. (12th Ed.) 626.

As persons dealing with an agent are bound to take notice of the extent of his powers, a transfer of property by a factor not au-

thorized by the powers delegated to him by the principal creates no right in the person dealing with him, as against the principal. It follows that innocent purchasers or pledgees, who, relying upon the indicia of title afforded by his possession of the goods, have dealt with the factor, supposing him to be the actual owner, acquire no title to the property where the transfer is unauthorized by the express or implied terms of the principal's instructions. Applying these rules to the present case, inasmuch as the Keen-Sutterle Company, the factor of the plaintiff, transcended its authority in consigning the wool upon advances to Jagode & Co., the latter, except for the provisions of the factor's act, would have acquired no title to the property as against the real owner, the plaintiff; and, as Jagode & Co. could not transfer a better title than they had themselves, the defendant could not have acquired any title to the wool through Jagode & Co. as against the plaintiff.

The factor's act of Pennsylvania is designed to remedy the hardship of the common law whereby "factors authorized to sell the goods of their principal, and who are held out to the world as the owners thereof, have no power to pledge the goods in their possession for advances made by persons who have reason to believe that they are the actual owners." See Mackay v. Dillinger, 73 Pa. 90. Unlike cognate legislation in some of the other states, the act does not purport to give validity to all contracts made by a factor in respect to the disposition of the goods with innocent third persons who advance money therefor, but it is limited to the protection of third persons who advance money or negotiable instruments upon a deposit or pledge of the goods by the factor. The third section of the act provides as follows:

"Whenever a consignee or factor, having possession of merchandise, with authority to sell the same, * * * shall dispose of or pledge such merchandise or any part thereof, with any person as a security for any money advanced or negotiable instrument given by him upon the faith thereof, such other person shall acquire by virtue of such contract the same interest in and authority over the said merchandise as he would have acquired thereby if such consignee or factor had been the actual owner thereof: provided, that such person shall not have notice by document or otherwise, before the time of such advance or receipt, that the holder of such merchandise or document is not the actual owner of such merchandise." P. L. 1833–34, p. 376.

This statute, being in derogation of the common law, is to be strictly construed. Shaw v. Railroad Co., 101 U. S. 557, 25 L. Ed. 892; Machine Co. v. Heller, supra; Bank v. Shaw, 61 N. Y. 283.

But, upon the most literal construction, the terms of the section protect a factor who has received from another factor a consignment of merchandise in the possession of the latter, and made advances thereon, without notice by document or otherwise that the consigning factor was not the actual owner. The factor thus receiving a consignment and making advances thereon acquires, by the explicit language of the section, the same "interest in and authority over" the merchandise as though the consigning factor were at the time its actual owner. Until his lien is satisfied he has the same right to sell or dispose of the merchandise that he would

have had if it had been consigned to him by the actual owner, and any sale or transfer of it made by him conformably with a factor's duty to his principal will devest the title of the real owner. Unless he can sell the merchandise, his lien would be of no value, and the statute would be merely an illusory protection to him. The terms of the section apply to and control the transaction between the Keen-Sutterle Company and Jagode & Co. The Keen-Sutterle Company, being in possession of the wool, consigned it to Jagode & Co., and the latter made the advances without notice that the Keen-Sutterle Company was not the actual owner. Consequently Jagode & Co., by force of the statute, became entitled to deal with the wool exactly as though the Keen-Sutterle Company had been the owner, and had consigned it to them as its own factors.

We are of the opinion that the defendant acquired a valid title to the wool under the arrangement made by Jagode & Co. in the replevin suit. Jagode & Co. sold the wool, as factors, in the ordinary course of business, to a Massachusetts purchaser. If the goods had been delivered to this purchaser, the title of the Keen-Sutterle Company, and consequently the plaintiff's title, would have been completely devested. The sale, being authorized by the implied powers of Jagode & Co. as factors, would have passed the title of their consignor as that of "the actual owner" of the wool; and thereafter all right of the plaintiff in the wool would have been gone, and in lieu thereof he would have been relegated to his claim upon Jagode & Co. for the price, less their advances to the Keen-Sutterle Company and their commissions. Before the wool was actually delivered to the purchaser it was taken from the possession of Jagode & Co., in Massachusetts, by the proceedings in the replevin action brought by the present defendant. The law authorized the bringing of such an action, and compelled Jagode & Co. to accept the bond given at the institution of the action in lieu of the possession of the goods. According to the rule which obtains in some jurisdictions, the bond becomes a substitute for the property, and the plaintiff in such an action acquires a title to the property in dispute, which he may dispose of before the decision of the cause. Stewart v. Wolf (Pa. Sup.) 7 Atl. 165; Fisher v. Whoollery, 25 Pa. 197. This rule does not obtain in Massachusetts. Lockwood v. Perry, 9 Metc. (Mass.) 440; White v. Dolliver, 113 Mass. 400. The judgment in such an action is conclusive between the parties, both as to the value and the ownership of the property, if the ownership is in issue. Leonard v. Whitney, 109 Mass. 267. When in such an action judgment is rendered for the defendant for the return of the property, or in the alternative a recovery of its value, the payment of the recovery by the defendant operates to transfer to him all the right and interest of the plaintiff in the property. Hunt v. Bennett, 4 G. Greene, 512; Pickett v. Bridges, 10 Humph. 171; Brinsmead v. Harrison, L. R. 6 C. P. 584; Thayer v. Manley, 73 N. Y. 305; Lovejoy v. Murray, 3 Wall. 1, 18 L. Ed. 129; Howard v. Smith, 12 Pick. 202; Holmes v. Wilson, 10 Adol. & E. 503. In defending the replevin action and consenting to the stipulation made therein, we do not doubt that Jagode & Co. were acting within the scope of their implied au-

thority as factors. The goods, without fault on their part, had been transferred from the market where they were originally to be sold to another state. They had a large interest in them, growing out of their advances,—an interest larger than that of their consignor. The consignor had failed. To have brought the wool back to Philadelphia and resold it there would have entailed a considerable expense, and they had an opportunity to obtain from the defendant its full value where it was. Having made these large advances, they were clothed with the right to sell the wool, in the exercise of a sound discretion, not inconsistent with their duties to their principal. Under the circumstances, the arrangement made with the defendant, and which was, in substance, a sale of the wool, was one for the best interests of their consignor, and one, therefore, which they had a right to make. Their consignor being bound by the arrangement, the plaintiff has no remedy against the defendant, because, as between them and their consignor, the latter was, pursuant to the terms of the factor's act, the owner of the wool, and the defendant consequently acquired the owner's title by the purchase.

We conclude that the trial judge properly directed a verdict for the defendant, and that the judgment should be affirmed.