JUNION, Respondent, vs. SNAVELY MOTOR COMPANY, Ap-
pellant.

*February 9—March 10, 1925.*

*Automobiles: Collision with bicyclist at street intersection: Con-
    tributory negligence: Question for jury: Excessive damages:
    Trial: Change of written verdict of jury.*

1. In an action for injuries sustained by being thrown from a
    bicycle in a collision with a cab, the question as to the con-
    tributory negligence of the bicyclist is for the jury under con-
    flicting evidence as to whether he sufficiently indicated an
    intention to make a left turn.   p. 300.

Junion v. Snavely Motor Co. 186 Wis. 298.

2. A verdict of $1,500 is *held* not excessive for a dislocated shoulder resulting in much pain and suffering, permanent loss of thirty per cent. of the use or elevation of the arm, the necessity of doing lighter work, a loss of $600 in wages, and a physician's services reasonably worth $70. p. 300.
3. Where the answer to a question of the special verdict was written "No" instead of "Yes," and the jury was reassembled after having left the jury box but not the court room, and was permitted to correct the answer, the correction was proper, and not an impeachment of the verdict; and the fact that the jury retired to the jury room for three minutes to make the correction was immaterial. p. 301.

APPEAL from a judgment of the circuit court for Brown county: HENRY GRAASS, Circuit Judge. *Affirmed.*

Action to recover damages for personal injuries sustained in a collision between plaintiff and the defendant's cab. On the morning of July 12, 1923, at about 6:45 o'clock, the plaintiff was riding west on West Walnut street on a bicycle to his work. The defendant was proceeding in the same direction and some distance behind the plaintiff. On coming to the intersection of West Walnut street and Pearl street the plaintiff intended and did start to turn south to proceed on Pearl street to his place of work. As he was making the turn the defendant's cab struck him, resulting in the injuries complained of, which consisted principally of a dislocated shoulder joint, resulting in permanent injuries, as plaintiff's evidence tended to show. The jury by a special verdict found (1) that at the time of the collision the defendant was driving his car at an unlawful rate of speed; (2) that such speed was the proximate cause of the collision; (3) that the defendant failed to exercise ordinary care at the time of the accident in not knowing that the plaintiff was turning at the intersection of Pearl street; (4) that such negligence was the proximate cause of plaintiff's injury; (5) that no want of ordinary care on the part of the plaintiff contributed to produce his injuries; and (6) damages in the sum of $1,500. From a judgment entered upon the verdict in favor of the plaintiff the defendant appealed.

For the appellant there was a brief by *Kittell, Jaseph, Young & Everson* of Green Bay, and oral argument by *Lynn D. Jaseph.*

For the respondent there was a brief by *Minahan, Minahan, Minahan & Duquaine* and *J. Victor McCormick,* all of Green Bay, and oral argument by *Mr. McCormick.*

VINJE, C. J.     The defendant assigned three errors which it claims should reverse the judgment of the trial court.   It claims, first, that the evidence shows that the plaintiff was guilty of contributory negligence as a matter of law in making the turn without at the same time indicating that he was about to make it; second, that the court erred in permitting the jury to change the answer of the special verdict from a finding of contributory negligence to the contrary answer; and third, that the damages are excessive.  We shall not discuss at any length the first and third assignments of error.    The evidence was somewhat in conflict as to just when and to what extent the plaintiff indicated, by holding out his arm, that he was going to make the turn to the south. He testifies in substance that he held out his arm some time before he started to make the turn and that he then knew that defendant's cab was some distance behind him.    Upon this subject the evidence is in conflict and therefore it was a jury question as to whether under all the circumstances the plaintiff was free from contributory negligence.    Plaintiff's shoulder was dislocated, and there is evidence that there will be a permanent injury resulting in a loss of about thirty per cent. of the use or elevation of the arm.    He was forty years of age and had earned about $100 per month before the injury.    Since that time he had to do lighter work; had lost about $600 in wages, and his doctor's services were reasonably worth $70.    Under such evidence, in view of the fact that there was considerable pain and suffering, we cannot say that an assessment of $1,500 was excessive.

Junion v. Snavely Motor Co. 186 Wis. 298.

It appears from the record that just after the verdict was returned by the jury the foreman of the jury inquired what was the answer recorded to the fifth question relating to contributory negligence and he was informed that the answer was "Yes." He immediately stated that that was a mistake and that it was unanimously agreed by the jury that the answer to that question should be "No;" that there had been a mistake in recording the answer. When this colloquy took place some of the jurors had left the jury box but none of them had left the court room. The judge directed the jurors to be reassembled and sent them to the jury room for the purpose of permitting them to correct the answer to the fifth question. The jury returned to their room and within three minutes reported again to the court and returned a negative answer to question number 5, relating to contributory negligence. The defendant claims that the court erred in calling the jury together for the purpose of making the correction. It insists that the jury was discharged and that there was no power in the court to call them together again for the purpose of amending their verdict to conform with the facts as declared by the foreman that the unanimous agreement was that the answer to the fifth question should be "No." This is not a case where the jury seeks to impeach the verdict rendered, but a case where, before they finally leave the court room, they informed the judge that an error had occurred in reducing their agreement to writing. It is well settled law both in our own jurisdiction and in other jurisdictions that there is an inherent power in the court to permit such errors to be corrected. In *Dalrymple v. Williams,* 63 N. Y. 361, the court said:

"It would be a reproach upon the administration of justice if a party could lose the benefit of a trial and a verdict in his favor by the mere mistake of the foreman of the jury in reporting to the court the result of the deliberations of himself and his fellows."

In *Wolfgram v. Schoepke,* 123 Wis. 19, 100 N. W. 1054, our court said:

"But is it an attempt to impeach their own verdict? That depends on the sense in which that word is used. Is the written paper filed, or the agreement which the jury reach, the verdict? We think the latter is what is intended when we say the jurors cannot impeach it. The former, like most records or writings, is but the expression or evidence of some mental conception. Hence it may well be said that a showing that such writing is not correct is not impeachment of the verdict itself."

In *Victor S. M. Co. v. Heller,* 44 Wis. 265, the court said:

"We do not think there was any error committed by the court with respect to the verdict. It is true the record shows that the judge, after the delivery of the verdict, said to the jurors that they were discharged; but immediately thereafter, before they had left their seats or communicated with any one, the judge called their attention to the imperfections in the verdict, and, having put the same in the form in which the jurors affirmed they intended it to be, it was signed by the foreman, and, as so amended, declared by the jury to be their verdict. The judges of the circuit courts are frequently called upon to perform a work of this kind. Jurors unacquainted with the forms of law very often deliver very informal verdicts; and, where their intentions are clearly indicated by such informal verdict, it becomes the duty of the court to put it in proper form before it is entered as the verdict of the jury. It is in furtherance of justice that the judge should do so. When it is clear that the verdict, as finally put in form by the court, is the one intended by the informal one delivered by the jury at first, no injustice is done to the parties if, after the same is so put in formal shape, the jury, without further consultation and without again retiring to consult, assent to the entry thereof."

In this case the jury was sent out to the jury room for the purpose of making the correction called to the attention of the court by the foreman. It is evident that it must have

been the unanimous view of the jury that ques ion number 5 should have been answered in the negative, otherwise they would not have agreed upon a verdict and returned to the court within three minutes. Whether the correction is made in the jury box or in the jury room is quite immaterial when it appears that there has been a mistake in reducing the agreement of the jury to writing and a correct verdict is returned. Such correction of the mistake may be made in the court room in the presence of the court, or the court may in its discretion send the jury to the jury room, there to make the correction and return the verdict which they had agreed upon and which they intended to make. Counsel for respondent cite a large number of cases sustaining the power of the court to permit the jury to correct their written verdict where there has been a mistake in reducing it to writing. In view of the cases in our own court we do not deem it necessary to quote from or even cite the cases which counsel have furnished us in their valuable brief.

*By the Court.*—Judgment affirmed.