HUSTING, Administratrix, Plaintiff and Appellant, vs. DIETZEN and others, Defendants and Respondents: WESTERN CASUALTY & SURETY COMPANY, Interpleaded Defendant and Appellant.

*April 8—April 27, 1937.*

For the appellants there was a brief by *Kelley & Boerner* of Fond du Lac, attorneys for Kate Husting, and *Ray Demp-*

*sey* of Oshkosh of counsel, and by *John P. McGalloway* of Fond du Lac, attorney for the Western Casualty & Surety Company, and oral argument by *Mr. J. L. Kelley* and *Mr. McGalloway.*

For the respondents there was a brief by *Barber, Keefe, Patri & Stillman,* attorneys, and *Frank B. Keefe* and *W. Mead Stillman* of counsel, all of Oshkosh, and oral argument by *Mr. Keefe* and *Mr. Stillman.*

MARTIN, J.   The principal error relied upon by the appellants is based on the following occurrence : It appears that the case was submitted to the jury at 11 :25 a. m.   The jury returned into court at 7 :45 p. m.   The court inquired of the jury if they had agreed upon a verdict, to which inquiry the foreman responded in the affirmative.   Thereupon the court said :

"Members of the jury, I will read this verdict to you, and then I will have some questions to ask about it."

It then appeared that the jury had answered subdivision (a) of Question No. 1, with reference to negligence of the driver of the Dietzen truck to the speed at which he operated the same, "No ;" (b) with respect to keeping a proper lookout, "Yes ;" (c) with respect to having said truck under proper control, "No ;" (d) with respect to operating the same on the wrong side of the center line of the highway, "Yes ;" (e) with respect to yielding to the Husting car the right of way, "No."

As to Question No. 2, which reads : "If you answer any of the five subdivisions of Question No. 1 'Yes,' then answer the following : Which respective act or acts of negligence of said Elmer Keller, referred to in the first question, if any are found by you to have occurred, caused said collision so that the same resulted therefrom as a natural and probable con-

sequence?" This question was answered by inserting the letters (c), (d), and (e).

Question No. 3, as to the negligence of Mr. Husting, was answered as follows: "(1) with respect to the speed at which he operated the same? No. (2) With respect to bringing his said automobile to a full and complete stop within thirty feet of the near limits of the intersection of the two highways which he was then approaching? No. (3) With respect to keeping a proper lookout? No. (4) With respect to keeping his said automobile under proper control? No. (5) With respect to failing to yield to the defendant's truck the right of way at said intersection? No."

Question No. 4, as to causation, was left unanswered. All questions as to damages were answered as set out in the statement of facts. As to the percentage of negligence attributable to Elmer Keller, the jury answered, thirty-three and one-third per cent, and as to Mr. Husting, the jury answered, sixty-six and two-thirds per cent.

The court then said:

"Now I wish to call your attention to what seems to the court an evident inconsistency in your verdict. You have by your verdict found that three of the specifications—or two of the specifications in Question No. 1 relating to any negligence claimed to have been committed by Elmer Keller, you have found as to specification (c) with respect to having the truck under proper control an answer 'No,' and yet in your answer to Question No. 2, which was, 'If you answer any of the five subdivisions of Question No. 1 "Yes," then answer the following: Which respective act or acts of negligence of said Elmer Keller, referred to in the first question, if any are found by you to have occurred, caused said collision so that the same resulted therefrom as a natural and probable consequence?' To that, among other things, you have answered 'Act lettered: C.' Yet by your answer to the specification you have found that he was not negligent with respect to having the truck under proper control, and yet you say that that

was one of the acts of the said Elmer Keller which caused the collision. Now is that your verdict? Is that what the jury intended to find? If the foreman has any information to give to the court on that I would like to hear it.

"Foreman: Will you repeat those questions again please?

"By the Court: Yes. The first question is this, I will read the specification with it. (The court reads the first paragraph of Question No. 1, without reading the specifications.)

"Now you have answered subdivision C of that question which reads with respect to having said truck under proper control, you have answered that 'No,' and you have also answered subdivision E which reads with respect to failing to yield to the Husting Buick car the right of way, you have answered that 'No.' Then by your answer to Question No. 2 which reads, 'If you answer any of the five subdivisions of Question No. 1 "Yes," then answer the following: Which respective act or acts of negligence of said Elmer Keller, referred to in the first question, if any are found by you to have occurred, caused said collision so that the same resulted therefrom as a natural and probable consequence?' Now to that you have answered 'Acts lettered: C, D, and E.' Now that second question was which act or acts of negligence which you have found by your answers to the subdivisions of the first question caused the collision. Now acts C and E you answered 'No,' they were not the cause of the collision, by your answers to the first question. Yet by your answer to the second question you include both of those as being acts which caused the collision. Now the only acts which you found were negligence in your answer to the first question were respecting keeping a proper lookout and operating the car on the wrong side of the road, the center line of the road, and yet you only specify one of those as being a cause of the collision. The two answers are manifestly inconsistent, and it leads to the question whether you didn't make a mistake or whether you intended making a different finding. Now I will go on. I will call your attention to the fact that by your answer to Question No. 3 you have found that Bonduel A. Husting was not negligent in any respect and yet by your answer to Question No. 9 you found as follows: That the percentage of the total negligence of both

drivers causing the collision and the consequent damages—you attribute to Bonduel Husting sixty-six and two-thirds per cent. That is manifestly inconsistent with your finding to Question No. 3 where you answer 'No' to each of the questions or specifications on the part of Husting.

"Foreman: That is a mistake.

"By the Court: Now have any of you any information to give me on the questions I put to you, whether your answers are a mistake, that is whether your answers as written down here are a mistake in view of what you actually found or whether these answers as you have written them down are your actual conclusions from the evidence.

"Foreman: I don't think so. I think it is a mistake putting it down.

"By the Court: Well are any of you of the same opinion.

"Jurors: I am, your Honor; I am, your Honor; I am, your Honor, etc.

"By the Court: You will return to your jury room and correct the answers to conform to your actual conclusions."

The jury then retired to the jury room, and at 8:15 p. m. returned into court. Thereupon the following took place:

"By the Court: You may call the jury again Mr. Clerk.

"Members of the Jury, have you made the corrections in your verdict?

"Foreman: Your Honor, we have.

"By the Court: You believe with the corrections that you have made in your verdict it now reflects your true conclusions as you finally arrived at them?

"Foreman: I do.

"By the Court: Is that your opinion Mr. Foreman?

"Foreman: Yes, your Honor.

"By the Court: Well I will read the verdict again to you. [The judge reads the verdict.]

"Question No. 1 is answered: (a) No; (b) No; (c) Yes; (d) Yes; (e) Yes.

"Question No. 2: Acts lettered C, D, E.

"Question No. 3: (1) No; (2) Yes; (3) Yes; (4) Yes; (5) Yes.

"Question No. 4: Acts numbered: 2, 3, 4, 5."

The assessment of damages was unchanged. Question No. 9 attributed the same percentage of negligence to the parties as first reported, that is, the driver of the truck was found to be thirty-three and one-third per cent negligent and Mr. Husting was found to be sixty-six and two-thirds per cent negligent. The court then inquired:

"Members of the Jury, is that your verdict? Jurors: It is.

"By the Court: Are you unanimous in your answers? Jurors: Yes, we are.

"By the Court: The verdict will be received and you are discharged from this case and excused until next Monday morning at 10 o'clock."

The appellants vigorously contend that the trial court overstepped the bounds and the limits to which a trial court may interfere with the verdict rendered and resubmit the case. We think otherwise. Trial courts must have some freedom of action when confronted with a situation such as was presented when the jury first returned into court. Obviously, the verdict was then defective. The jury had found that the deceased was sixty-six and two-thirds per cent negligent. Yet, in answering the five subdivisions of Question No. 3, as their answers had been recorded, no negligence on the part of the deceased was found.

It appears from the foregoing transcript of the proceedings had that as soon as the court directed the attention of the jurors to the defects pointed out, the foreman of the jury stated that it was a mistake in putting down the answers. This statement was concurred in by the rest of the jurors. A similar situation was presented in *Jackson v. Robert L. Reisinger & Co.* 219 Wis. 535, 540, 541, 263 N. W. 641. There, when the verdict was returned into court and read by the clerk, the judge called the attention of the jury to certain answers in the verdict and to the form of the verdict.

The trial judge handed the verdict back to the jurors "with instruction to go back to the jury room and go over the verdict carefully; to read carefully each question and each answer and see if they 'had answered the question the way they wanted to, and whether they wished to make any correction in it.' They later returned with the answer to Question No. 2 unchanged, and with their first answers to Questions Nos. 3, 4, and 5 stricken." The verdict was then received after the jury on inquiry had answered that it was then their verdict. This court said:

"We see no error in this. The court did not change the answers, but left it entirely to the jury to make their own corrections. He gave them no instructions or intimation respecting their answer to Question (2), which was the foundation of their answers to the other three questions which they were not to answer if they answered (2) as they had answered. That the verdict was defective in form when first returned was manifest."

That the court may require the correction of a defective verdict is also held in *Victor Sewing Machine Co. v. Heller,* 44 Wis. 265; *State ex rel. Town of White Oak Springs v. Clementson,* 69 Wis. 628, 35 N. W. 56; *Wightman v. Chicago & N. W. R. Co.* 73 Wis. 169, 40 N. W. 689; *S. C. Herbst Importing Co. v. Burnham,* 81 Wis. 408, 412, 51 N. W. 262; *Doran v. Ryan,* 81 Wis. 63, 51 N. W. 259; *Chandler v. Hinds,* 135 Wis. 43, 115 N. W. 339; *Junion v. Snavely Motor Co.* 186 Wis. 298, 202 N. W. 674.

This same rule has been applied in a criminal case. See *State v. Kuenzli,* 208 Wis. 340, 242 N. W. 147. What is said in *Stricker v. Reedsburg,* 101 Wis. 457, 77 N. W. 897, seems to recognize the rule as followed in the above cases, but in general, it is contrary to what this court has held, both in earlier and in later cases. In so far as it is inconsistent with the rule as here announced, that decision is overruled.

What has been said, applies to the merits of the appellants' motion for a new trial. We will not further discuss that subject. We find no error to warrant our interfering with the verdict and judgment as rendered and entered. The judgment must be affirmed.

*By the Court.*—Judgment affirmed.

FRITZ, J., dissents.