FOUCHE v. SHEARER et al.

(District Court, N. D. Georgia, N. W. D. August 4, 1909.)

1. BANKRUPTCY (§ 175*)—FRAUDULENT TRANSFERS—CONVEYANCE BY WIFE TO HUSBAND.

A conveyance by a wife to her husband, made on the eve of bankruptcy, leaving her nothing to pay creditors, is prima facie fraudulent.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 175.*]

2. BANKRUPTCY (§ 227*)—REPORT OF MASTER—REVIEW.

A master's report, finding that a conveyance by a member of a bankrupt firm to her husband was fraudulent, could not be set aside on certificate, unless clearly and manifestly erroneous.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 227.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

3. BANKRUPTCY (§ 303*)—FRAUDULENT TRANSFERS—CONVEYANCE BY WIFE TO HUSBAND—FINDINGS—EVIDENCE.

Evidence held to sustain a finding that a conveyance by a member of a bankrupt firm to her husband was made with intent to defraud her creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

In Equity.

J. M. Bellah, for trustee.
G. E. Maddox and F. W. Copeland, for defendants.

NEWMAN, District Judge. Shearer & Shearer is a bankrupt firm composed of J. H. Shearer and Mrs. M. E. Shearer; the latter being the wife of G. S. Shearer. Sproull Fouche, as trustee for Shearer & Shearer, brings this bill in equity in the District Court against G. S. Shearer, T. J. Wadkins, and G. R. Anderson, seeking to have set aside, or have canceled as a cloud on the title, a certain deed to a piece of land in Lyerly, Chatooga county, Ga. The land in question was bought originally from G. R. Anderson, who made a bond for title to Mrs. M. E. Shearer, having received $500 in cash at the time of the sale; the total purchase price being $800. Bond for title at the time of the sale was given to Mrs. M. E. Shearer by G. R. Anderson. A short time before the bankruptcy proceedings, the remaining $300 was paid, and a deed was executed by Anderson to G. S. Shearer, the husband. After the adjudication in bankruptcy, a deed was made and executed to the property by G. S. Shearer to T. J. Wadkins, who had theretofore been an employé in the store of Shearer & Shearer, and lived in the home of G. S. Shearer and his wife, Mrs. M. E. Shearer.

It is charged in the bill that the making of the deed by G. R. Anderson to G. S. Shearer was in contemplation of the bankruptcy of the firm of Shearer & Shearer, and that the deed from G. S. Shearer to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

T. J. Wadkins was in furtherance of a scheme to prevent the property from being subjected to the debts of the bankrupt firm of Shearer & Shearer. It seems from the evidence that G. S. Shearer was the active person in managing his wife's interests in the bankrupt firm. The contention is, in the bill and in argument, that it was apparent that the firm of which Mrs. M. E. Shearer was a member was about to go into bankruptcy, that they caused a deed to be made to the husband, and he, as stated, subsequently, and after the bankruptcy proceedings, made a deed to T. J. Wadkins to get the property still further out of the hands of the creditors of the firm.

The case was referred to W. S. Rowell, as special master, and his report is as follows:

"This is a bill filed by the trustee for the purpose of subjecting assets claimed to be held in fraud by the defendant T. J. Wadkins against the rights of the creditors of the bankrupt. It was filed on December 5, 1908. The only defensive pleading filed was the joint answer of the respondents G. S. Shearer and T. J. Wadkins. On January 16, 1909, and on March 12, 1909, the special master proceeded to take evidence offered by the complainant and respondent on issues made by the bill and joint answer, and the record of the evidence is made up. In the outset of his examination of the pleadings and evidence, for the purpose of deciding the issues, the special master is confronted with the proposition that, notwithstanding the many indicia of fraud disclosed by the record, there is a possibility that the respondent T. J. Wadkins might be entitled to protection upon the grounds that his actions have been bona fide. The special master has therefore scrutinized the record with great care to see if, under any possibility, this respondent has acted in good faith, and if he has bona fide parted with the $850 he claims to have paid.

"The examination of the pleadings filed fails to suggest to the reasonable mind, seeking for the truth, a just claim of right in this respondent. The bill charges: That certain lots in Lyerly, with a residence thereon, are, in reality, the property of the bankrupt, Mrs. M. E. Shearer; that she made the contract for the purchase of the lots early in the year 1907; that her money paid for the lots; that no one has ever repaid this money to her; that the bond for title was made to her; that the papers executed by Anderson to G. S. Shearer and from G. S. Shearer to T. J. Wadkins were fraudulent as against creditors; and that the bankrupt never received the purchase money.

"A feature of the joint answer of defendants is that the pleader seems to intend to leave the defense in rather clouded shape. He repeats over and over allegations of good faith. He subjects himself to the suggestion that he protests too much; but he denies facts which, in the light of the respondent's own evidence, should have been admitted; depends on writings executed after the bankruptcy proceedings by the co-respondents in fraud. He seems to plant himself on the proposition that, when the co-respondents produced writings entered into between themselves, the burden is cast upon the trustee to prove by positive and direct evidence that the same were not bona fide.

"The special master does not agree with this view of the law suggested by the plea, and he is of the opinion that the rule laid down in Booher v. Worrill, 57 Ga. 235, that a conveyance by a wife to the husband, made on the eve of bankruptcy, leaving her nothing out of which to pay creditors, is prima facie fraudulent, is the proper rule to enforce in this case. This plea, with apparent indifference to the two rules of law—that the wife cannot contract with her husband, and that a contract for the sale of land is shown by the writings—carelessly alleges that, while the bond for title was made directly to the wife, and the wife signed a check for $500 of the purchase money, and the wife signed her notes for the balance of the purchase money, it was really the husband's purchase of land, and he simply borrowed the $500 from his wife. The pleadings at the outset impress the ordinary intelligence unfortunately for the contentions of the respondent T. J. Wadkins. For this very reason, the special master recognizes the fact that the evidence must be

172 F.—38

carefully examined to see that a judgment subjecting this property is not entered unless the evidence clearly discloses that the respondent T. J. Wadkins has acted in bad faith and fraudulently.

"The evidence introduced by complainant clothes this transaction, both as to Shearer and Wadkins, with many indicia of fraud. Under this evidence the conclusion is irresistible that both Shearer and Wadkins were insolvent before filing a proceeding in bankruptcy. Shearer could not do business in his own name. A levy on the very property claimed by the trustee of a fi. fa. against Shearer was introduced in evidence. The defendant Wadkins was accustomed to being sued for small amounts in justice court. He was shown to have obtained money on personal security, and the securities were compelled to pay the debts. He had claimed two months' salary from the trustee, when the bankruptcy proceedings were first filed, upon the ground that he was a poor orphan boy and needed money. This evidence of insolvency was also proven in regard to other parties called into the transaction by the respondent as lenders of money.

"The evidence clearly suggested: That G. S. Shearer had absolute and entire control of the business of Shearer & Shearer, both as regarded his wife's and his brother's interest; that he only remained out of the business because of his insolvency; that he had better knowledge than any other person of the affairs of Shearer & Shearer. In this connection, the same general knowledge of the condition of the affairs of Shearer & Shearer and of the relation of the husband and wife to the trade for the land was forced home on the respondent T. J. Wadkins. He was and is living in the house with Mr. and Mrs. Shearer, and employed by them.

"The petition in bankruptcy was voluntary in nature. It was filed only a few days after the shifting of the property from the partner, Mrs. M. E. Shearer, to her husband. Under the evidence, G. S. Shearer can properly be recognized as the moving spirit in the filing of this voluntary petition.

"There is evidence that the respondent G. S. Shearer, before the execution of the deed by him to the respondent T. J. Wadkins, sought to have a fraudulent deed executed, dating it back, because he was about to fail in his effort to save the property to himself by reason of the fact that a judgment against him was about to be levied on it; but the special master goes a step further to see if there was a bona fide transaction by which G. S. Shearer received $850 from T. J. Wadkins. What reasonable man would pay $850 or receive $850 after a proceeding in bankruptcy had been filed, with all this indicia of fraud surrounding the transaction, without having disinterested witnesses to prove the bona fides of the transaction? It is absurd to imagine that intelligent men, under the circumstances, would enter into this transaction, keeping the secret to themselves. With the respondent G. S. Shearer very sick at the time, these two parties took an unnecessary trip away from Lyerly, and into the country, to have this paper drawn and executed. These two swear to the payment of the $850. The witness Curry says that he saw the respondent Wadkins draw some money from his inside pocket. How much money, he does not suggest. It might be referred to, under his testimony, as "a" money, for he does not tell whether it was $5 or $500. He was then, unfortunately, called away, and he did not see any money paid to Shearer. He stated that his daughter, Lydia, remained. It is the opinion of the special master that on this material fact (although a form of payment might have existed and the proceedings still be utterly fraudulent) the testimony of Miss Lydia would have been worth a great deal more than that of the two respondents. They did not introduce her on this subject.

"But the proper, and really the only, evidence of bona fides in this case, would consist in showing that the bankrupt, Mrs. M. E. Shearer, received back the money, and its disposition. After the 11th day of June, 1907, the respondent, G. S. Shearer, claims to have paid to his wife the money she had advanced. If this is true, in the few days intervening—and it was not all paid at one time, but in different payments—more than $500 was received by the bankrupt, and it would have been easy to show what creditors of the bankrupt received this money, or where the bankrupt had this money deposited. This was not attempted.

"Again, if the transaction was in good faith, and if G. S. Shearer received $850 from T. J. Wadkins, the best evidence possible of bona fides would have been the production of this $850 in court, showing that Shearer had it, or else accounting for it by showing transactions in which he had used this much money. This was not attempted by Shearer; but, on the other hand, when cross-examined on this subject by counsel for the trustee, he utterly failed to show the disposition of this amount of money.

"The special master has been confronted with a case where the respondents, seeking to hold this property, insist solely, by pleadings and evidence, on denying facts. They have not produced before the court evidence from any of the sources which would be suggested as a proper repository of evidence of good faith.

"The special master therefore finds: That the deed executed by Anderson to G. S. Shearer was in furtherance of a fraudulent scheme, entered into by said Shearer, whether known to Anderson or not, to hinder, delay, and defraud the creditors of Shearer & Shearer; that the execution of the deed from G. S. Shearer to T. J. Wadkins was fraudulent upon the grounds that there is no evidence from any proper source, and that such proper source exists: and that the transaction between Shearer and Wadkins was bona fide. He therefore finds further that the prayer of the petition be sustained, title to the lots described in the petition be declared to be in the trustee, and the respondent be required to execute such deeds as are necessary to comply with this finding."

I think this is peculiarly a case where the rule should be invoked that the master's report will not be set aside unless clearly and manifestly erroneous. The question is whether these people acted in good faith or fraudulently, and whether or not there was real consideration between Wadkins and G. S. Shearer, and between G. S. Shearer and his wife.

There was considerable testimony, and witnesses were examined and cross-examined in person, in the presence of the special master, who saw them all and could well judge of their credibility and of the value of their testimony. More than this, I think the evidence fully justifies the report. The very clear statement made by the special master renders unnecessary any elaboration of the matter by the court.

As I do not see any reason for differing from the master as to his statement of the law, and his conclusion on the facts is justified by the evidence, accordingly, the report must be confirmed, and a decree may be taken in favor of the complainant as prayed.