### In re COZATSKY.

(District Court, D. Connecticut. August 25, 1914.)

No. 3233.

1. BANKRUPTCY (§ 228*)—FINDINGS OF REFEREE.
    Findings of fact made by a referee, who has heard the witnesses testify, should be accepted by the court, unless manifestly erroneous.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec. Dig. § 228.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—CONSIGNMENT OF
MERCHANDISE.

    A finding by a referee that a consignment agreement, under which merchandise was furnished to a bankrupt and was mingled by him with his other stock, was not made in good faith, but was fraudulent as to other creditors, affirmed, and the goods *held* to have become a part of the bankrupt's estate.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

  In the matter of Samuel Cozatsky, bankrupt. On petition of Nathan Spiro to review findings of referee. Affirmed.

  Spotswood D. Bowers and A. S. Geduldig, both of Bridgeport, Conn., for Nathan Spiro.

  James E. Connor, Jr., of New Haven, Conn., for trustee.

  THOMAS, District Judge. This matter comes before the court on the petition of Nathan Spiro, requesting that the referee's finding be added to and otherwise corrected. He also claims a review of the order of the referee by which his motion to intervene was disallowed.

  The question concerns the claim of Nathan Spiro to a lot of merchandise constituting the larger portion of the bankrupt's clothing stock, which Spiro says he sent to the bankrupt on consignment, but which the trustee claims as part of the bankrupt's estate. The merchandise was sold by the trustee to Max Spiro & Co. for $500 by virtue of an order of the referee which provided that the money received from the sale should be held pending a decision on the petition for review.

  All of the evidence has been certified and forms part of the record. It has been carefully examined. The question to be decided is whether this evidence is sufficient to sustain the referee's decision. The motion to intervene was denied, on the ground that the arrangement made was not between the bankrupt and Nathan Spiro, but was in fact between the bankrupt and the firm of Max Spiro & Co., and that they furnished the merchandise; that the arrangement was intended as a cover; that the written agreement (Exhibit B, hereinafter referred to), which was executed in the name of Nathan Spiro and the bankrupt, not being properly acknowledged, could not be upheld as a valid conditional sale agreement under the law of Connecticut; and that the arrangement tended to give the bankrupt a false credit.

  The evidence in the case establishes the following facts: Samuel Cozatsky, the bankrupt, was the proprietor of a small retail men's furnishing business in New Haven, and had been accustomed to purchase merchandise of Max Spiro & Co., a firm engaged in the manufacture of men's clothing in New York City; that this firm consisted of Max Spiro, Leo Weiss, and Jacob Cohen; that Weiss was accustomed, as traveling salesman for the firm, to visit and sell merchandise to Cozatsky and to make collections on bills owed by the bankrupt to that firm; that early in June, 1913, on one of his visits, Cozatsky informed Weiss that he desired to move to a new store in New Haven, but that he did not have sufficient capital to warrant him in moving. The evidence further shows that in June, 1913, the bankrupt was owing Max Spiro

& Co. between $100 and $150, and had about reached the limit of the credit which that firm was willing to give him. Weiss, however, told the bankrupt to rent the new store; that his firm would send a large amount of clothing on conditional sale or consignment, and would furnish $100 towards the expense for rent and lighting, and would pay the freight and cartage on the clothing which the firm would send, provided the bankrupt would agree to sell the clothing at retail, and semiweekly send the firm the total amount of such sales, and that the firm would then remit to the bankrupt his share of the net profits. To this the bankrupt agreed.

Although the firm of Max Spiro & Co. were thus to furnish a large quantity of clothing to the bankrupt, the transaction, on the suggestion of Weiss, was to be considered as between the bankrupt and one Nathan Spiro. The reason for this was that Max Spiro & Co. did not desire to be known as selling goods under conditional sale or consignment agreements, as this was not their custom. Nathan Spiro was the son of Max Spiro, a nephew of Weiss, and was, according to the testimony of Weiss, a young man between 19 and 21 years of age. Nathan was so connected with the business of the firm of Max Spiro & Co. that the bankrupt thought at the time this arrangement was made, as well as at the time of the hearing before the referee, that he was a member thereof. He had a desk in his father's office in the place of business of Max Spiro & Co. and assisted in showing merchandise when Cozatsky called to select stock for his new store.

On the 16th of June, 1913, the bankrupt went to the office of Attorney Geduldig in Bridgeport for the purpose of meeting a representative of Nathan Spiro, and the following agreement (Exhibit B) was drawn up and executed.

"This agreement, made this 16th day of June, by and between Nathan Spiro, of the city, county and state of New York, of the first part, and Samuel Cozatsky, of the city and county of New Haven, and state of Connecticut, witnesseth:

"I. That the said Spiro hereby covenants and agrees to and with the said Cozatsky that he will furnish the said Cozatsky with a full line of men's and youth's clothing, which clothing will be placed in the store of the said Cozatsky, in the city of New Haven (corner Grand Ave., and Hamilton St.), on consignment, the title and ownership of the said merchandise to remain in the said Spiro until the same is sold; and the said Spiro further agrees to pay one-half of the rent and light for the said store in which the said merchandise is to be located, as hereinafter stated. And

"II. In consideration of the said Spiro furnishing the said Cozatsky with the merchandise, as aforesaid, the said Cozatsky covenants and agrees to and with the said Spiro that he will not buy any men's and youth's clothing from any one else, except the said Spiro, and further agrees to give the said Spiro one-half of the profits accruing from the sale of the aforesaid merchandise, and is to render to the said Spiro an accounting of the said profits each and every half week from the date arrival of merchandise.

"III. It is further agreed by the said parties that the merchandise is to be billed and sold on condition and consignment and the amounts to be delivered it to be mutually agreed upon.

"IV. It is further agreed that this agreement is to continue for a period of 6 months, but may be extended by mutual agreement, after which the same may be terminated upon either party giving the other notice, in writing, 30 days before termination shall take place.

"V. That the said Cozatsky will use his best efforts to sell the said merchandise which the said Spiro shall place in his care, and shall send all the moneys taken in from said sales to the said Spiro semiweekly, and the said Spiro will render to the said Cozatsky a monthly accounting of the profits and expenses.

"VI. The rent and expenses are to be paid as follows: The said Spiro is to deduct the one-half expenses from the profits of the sales of merchandise, and the balance of the profits are to be equally divided, and if there is not enough profits to pay one-half expenses the said Spiro is to make good the difference.

"In witness whereof, we have hereunto set our hands and seals the day and date first above written.                                                    Nathan Spiro.
                                                                    "Sam Cozatsky.

"In the presence of
    "Louis Spinner.
    "A. S. Geduldig."

This agreement was recorded on the 30th day of June, 1913, in the town clerk's office in New Haven.

Subsequently Cozatsky went to Max Spiro & Co.'s place of business in New York and made selections from their stock of clothing, for use in his business. When he went there, he met Weiss and Nathan Spiro. Nathan assisted in showing the bankrupt the stock. Weiss drew and signed a check in behalf of Max Spiro & Co. for $75, payable to Nathan Spiro, who indorsed it over to Cozatsky, which sum was intended as part of the $100 promised for use in fitting up the new store, and the bankrupt used it for that purpose.

Some time afterwards the bankrupt received at different times three other firm checks, made out and indorsed in a similar manner, amounting in all to $90, to pay one-half the amount of rent of the new store for July, August, and September, 1913, and the money so received by Cozatsky was used by him for that purpose. Neither the firm nor Nathan Spiro paid anything towards the small expense of lighting the store, and at the time of adjudication there was a small amount due Cozatsky from the firm for freight which he had paid on the merchandise shipped him.

Although the agreement (Exhibit B) was not so executed and acknowledged as to meet the requirements of the provisions of the Connecticut statutes concerning conditional sale agreements, nevertheless Max Spiro & Co. shipped the bankrupt a lot of men's clothing billed at $889.25, the invoice thereof being typewritten and headed:

"All claims must be made within 5 days after receipt of goods.
                                                                "New York, July 1, 1913.

"Goods shipped to Mr. S. Cozatsky on consignment to be covered by insurance.

"Bought of Nathan Spiro, 119–121 Bleecker Street.

| "Lot. | Quantity. | Price. | Amount." |
| --- | --- | --- | --- |

Here followed a long list, describing the lot, quantity, price, and total, amounting to $889.25.

Cozatsky received this lot, containing 119 suits of clothing, and placed them in the new store, hanging them up on that side of his store devoted to the clothing business; the other side, with a counter in front of the

shelves, being used by him for the sale of his gent's furnishings. In the same section of his store in which said shipment of clothing was placed, bankrupt also placed other clothing forming a part of his stock in trade, some of which he carried over from his former place of business, and these were not kept separate from the others. Other than the manufacturer's brand of "Max Spiro & Company" there were no marks or anything else on the clothing thus shipped to the bankrupt to distinguish it from any other part of Cozatsky's clothing stock, and he never informed any other creditor, nor the mercantile agencies of Dun or Bradstreet when their representatives called, that the said clothing was not a part of his regular stock in trade. Neither were there any signs on the racks, or on the showcases, or on any part of the store wherein this clothing was kept, or anywhere about the store, to indicate that Nathan Spiro or any one other than the bankrupt was the owner thereof.

Bankrupt opened up business in his new store on July 5, 1913, and continued to carry on business there until the filing of his petition in bankruptcy, which was on September 27, 1913. During that period Weiss called from time to time, and examined the stock of clothing, and checked bankrupt's record of the sales which he had made therefrom.

On September 12, 1913, another lot of men's clothing consisting of 65 suits, billed at $467.01, was shipped to bankrupt from the business place of Max Spiro & Co., which lot bankrupt received and placed in his store with other clothing. This invoice, as well as bankrupt's name and address, and the words "To be covered by insurance," was written with ink on the regular printed billhead of Max Spiro & Co. and the same read as follows:

Max Spiro                    Leo Weiss                    Jacob Cohen
      All claims must be made within 5 days after receipt of goods.
Telephone 8015 Spring.                    .          New York, Sept. 12, 1913.
M    Consigned to Sam Cozatsky—New Haven, Conn.
                    To be covered by Insurance.

MAKERS OF                    Bought of MAX SPIRO & CO.,

BRAND CLOTHES                Manufacturers of
                             CLOTHING.

Terms .....................
Shipped via ....................                119–121 Bleecker St.

When this invoice was exhibited at the hearing before the referee, it plainly showed, and does now, that some one using a black lead pencil had drawn a line partly through the name "Max," and had placed above that name, also in lead pencil, the letter "N." Likewise a lead pencil line had been drawn through the characters "& Co." It also ap-

pears that some one had subsequently attempted to erase those altera-tions. The writing of the letter "N" with lead pencil was not, however, in the handwriting of Nathan Spiro, as is found by comparing his sig-nature to the petition and the affidavit attached thereto and presented to the court in support of his petition for review, and it does not appear from the evidence who made the changes, although the billhead was produced in court by the bankrupt, who claimed to have had it in his possession all the time since receiving it from New York.

With the first lot of clothing Max Spiro & Co. sent bankrupt a book containing the lot numbers of the suits and the prices for which each was to be sold at retail, and the bankrupt was to make a note in said book of, such of the clothing as he sold. The terms of the agreement (Exhibit B) were not carried out further than is above indicated, and when bankrupt sold articles from these lots of clothing it was his cus-tom to put the money in his pocket, the same as other moneys belong-ing to himself.

At no time did the bankrupt pretend that he was doing a consign-ment business, and the amount of stock sent him by Max Spiro & Co. was so large that it must have tended to induce others not acquainted with the facts to extend to him larger lines of credit than would other-wise have been given.

The bankrupt sold in all 33 suits from the two lots sent him as above set forth, receiving therefor about $280. The following remittances were made by Cozatsky by checks payable to Max Spiro & Co. and when returned through the clearing house to the Merchants' National Bank of New Haven, upon whom they were drawn, bore the indorse-ment "Max Spiro & Co.," viz.:

| | | |
|---|---|---|
| July 21, 1913 | | $ 44 85 |
| "   26,   " | | 39 30 |
| Aug. 20,   " | | 56 65 |
| "   23,   " | | 46 85 |
| | | $187 65 |

There was nothing whatever on the checks to indicate that Nathan Spiro had in any way been connected with the same.

Cozatsky's petition in bankruptcy was dated September 24, 1913, and filed September 27, 1913. In his schedule of assets attached to his peti-tion there is this entry in relation to the bankrupt's clothing stock, viz.:

"Clothing in store #685 Grand avenue subject to the rights of Nathan Spiro, $1,150."

Cozatsky was adjudicated bankrupt September 29, 1913. It does not appear that he informed either Nathan Spiro or any member of the firm of Max Spiro & Co. of his intention to file his petition in bankruptcy.

[1, 2] In the bankruptcy proceedings Attorney Geduldig, of Bridge-port, represented the interests of Max Spiro & Co. and of Nathan Spiro, and was engaged by Weiss, who also testified in behalf of his firm and in behalf of Nathan Spiro. The latter did not appear or tes-tify. The referee heard the evidence and saw the witnesses, and had an opportunity to judge of their credibility, and as his conclusion, in

so far as Nathan Spiro is concerned, seems fully warranted by the evidence and all legitimate inferences that may be drawn from it, the court is not justified in setting aside the order appealed from, and so confirms it.

In cases like this the rule is that the court should accept the conclusions of the referee on questions of fact unless the same are manifestly erroneous, because the referee hears the testimony and can note the demeanor of witnesses, and so is in a better position to determine the credit to be given the oral testimony. In re Shults et al. (D. C.) 135 Fed. 623; In re Wright-Dana Hardware Co. (C. C. A.) 30 Am. Bankr. Rep. 582, 211 Fed. 908; In re McDonald & Sons (D. C.) 178 Fed. 487; In re Williams (D. C.) 120 Fed. 542; Fouche v. Shearer (D. C.) 172 Fed. 592.

While consignment agreements are permitted and upheld under the law of Connecticut, the main question at issue always is: Was the agreement entered into by the parties in good faith? Lambert Hoisting Engine Co. v. Carmody, 79 Conn. 419, 65 Atl. 141; Romeo v. Martucci, 72 Conn. 504, 45 Atl. 1, 99, 47 L. R. A. 601, 77 Am. St. Rep. 327; Harris v. Coe et al., 71 Conn. 157, 41 Atl. 552.

As a result of the referee's finding, based upon the evidence to support it, as disclosed by the record, in which I concur, this question has been answered in the negative. For this reason, as well as for the further one that the evidence fails to disclose any real interest on the part of Nathan Spiro in the subject-matter of the controversy, in view of this finding, a decree will be entered confirming the referee's order and denying the requests contained in the petition for review.

Ordered accordingly.